LAW OFFICES OF ROBERT F. BRENNAN APC
Robert F. Brennan, SBN 132449
3150 Montrose Avenue
La Crescenta, CA 91214

BERGER & MONTAGUE, P.C.
E. Michelle Drake, MN Bar No. 0387366*
emdrake@bm.net
Joseph C. Hashmall, MN Bar No. 0392610*
jhashmall@bm.net
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Tel: 612.594.5999; Fax: 612.584.4470

FRANCIS & MAILMAN, P.C.
James A. Francis, PA Bar No. 77474*
jfrancis@consumerlawfirm.com
David A. Searles, PA Bar No. 21471**
dsearles@consumerlawfirm.com
Land Title Bldg, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
Tel: 215.735.8600; Fax: 215.940.8000

*admitted *pro hac vice*
** *pro hac vice* application forthcoming

*Attorneys for Plaintiff and the Proposed Class*
*[Additional Attorneys Listed on Next Page]*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN SMITH, individually and as a representative of the Class, | Case No.: 5:16-cv-00174-VAP-KK |
| Plaintiff, | **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT [UNOPPOSED]** |
| v. | |
| A-CHECK AMERICA INC. d/b/a A-CHECK GLOBAL, | **Date:** **February 27, 2017** <br> **Time:** **2:00 p.m.** <br> **Judge:** **Hon. Virginia Phillips** |
| Defendant. | **Crtm:** **8A** |

THE TATAR LAW FIRM, APC
Stephanie R. Tatar, SBN 237792
stephanie@thetatarlawfirm.com
3500 West Olive Ave, Suite 300
Burbank, CA 91505
Tel: 323.744.1146; Fax: 888.778.5695

NICHOLS KASTER, PLLP
Eleanor E. Frisch (SBN 304408)
E-mail:  efrisch@nka.com
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone:   (612) 256-3200
Facsimile:    (612) 338-4878

*Attorneys for Plaintiff and the Proposed Class*

SEYFARTH SHAW LLP
Pamela Q. Devata
E-mail: pdevata@seyfarth.com
131 South Dearborn Street, Suite 2400
Chicago, Illinois 60603
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

SEYFARTH SHAW LLP
Timothy L. Hix (SBN 184372)
E-mail: thix@seyfarth.com
333 S. Hope Street, Suite 3900
Los Angeles, California 90071
Telephone: (213) 270-9600
Facsimile: (213) 270-9601

SEYFARTH SHAW LLP
Jonathan L. Brophy (SBN 245223)
E-mail: jbrophy@seyfarth.com
Monica Rodriguez (SBN 299026)
E-mail: morodriguez@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

*Attorneys for Defendant A-Check America Inc. d/b/a A-Check Global*

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on February 27, 2017, at 2:00 p.m., or as soon thereafter as may be heard before the Honorable Virginia A. Phillips in Courtroom 8A of the above-entitled court, located at 350 West 1st Street, 8th Floor, Los Angeles, California, 90012, Plaintiff John Smith ("Plaintiff," "Named Plaintiff," or "Class Representative") will move, and hereby does move, for an entry of Order, pursuant to Federal Rule of Civil Procedure 23(e), for approval of the concurrently filed Settlement Agreement and Release, whereby this Court would:

a. Find that the requirements for certification of a settlement class have been satisfied, and certify the Settlement Class;

b. Preliminarily approve the Settlement Agreement as fair, reasonable, and adequate;

c. Find that the class notice procedure set forth below satisfies the requirements of due process and applicable law;

d. Set a date for the hearing at which the Court will finally determine the fairness, reasonableness, and adequacy of the proposed Settlement (the "Final Fairness Hearing"), such date to be no sooner than forty-five (45) days after the Opt-Out Deadline;

e. Appoint John Smith as Class Representative for the Settlement Class; and

f. Appoint Berger & Montague, P.C., as class counsel to the Settlement Class.

Defendant does not oppose this motion.  Therefore, Plaintiff requests that this motion be determined without oral argument pursuant to Local Rule 7-15 or, in the alternative, Plaintiff requests that the parties be allowed to appear telephonically should the Court require oral argument.

This motion is made on the grounds that the Settlement is fair, reasonable, and adequate, as well as being the product of adverse parties involved in arm's-length, good-faith negotiations after a year of litigation and discovery involving experienced class counsel.

This motion will be and is based on this Notice of Motion and Motion; the concurrently filed Memorandum of Points and Authorities; the concurrently filed Settlement Agreement and Release, fully executed as of January 27, 2017 (including the five exhibits attached thereto); the accompanying Declaration of Joseph C. Hashmall; the accompanying Proposed Order; and all other papers and records on file in this matter.

BERGER & MONTAGUE, P.C.

Dated: January 30, 2017    By: */s/ Joseph C. Hashmall*
E. Michelle Drake
emdrake@bm.net
Joseph C. Hashmall
jhashmall@bm.net
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Tel: 612.594.5999
Fax: 612.584.4470

LAW OFFICES OF ROBERT F. BRENNAN APC
Robert F. Brennan, SBN 132449
3150 Montrose Avenue
La Crescenta, CA 91214

FRANCIS & MAILMAN, P.C.
James A. Francis
jfrancis@consumerlawfirm.com
David A. Searles

dsearles@consumerlawfirm.com
Land Title Bldg, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
Tel: 215.735.8600
Fax: 215.940.8000

THE TATAR LAW FIRM, APC
Stephanie R. Tatar, SBN 237792
stephanie@thetatarlawfirm.com
3500 West Olive Ave, Suite 300
Burbank, CA 91505
Tel: 323.744.1146
Fax: 888.778.5695

NICHOLS KASTER, PLLP
Eleanor E. Frisch (SBN 304408)
E-mail:  efrisch@nka.com
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone:   (612) 256-3200
Facsimile:    (612) 338-4878

COUNSEL FOR PLAINTIFF

# MEMORANDUM OF POINTS & AUTHORITIES

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................. 1

II.  RELEVANT FACTS .......................................................... 1

    A.   THE PARTIES ENGAGED IN LITIGATION, FORMAL AND INFORMAL DISCOVERY, AND MEDIATION BEFORE REACHING THIS SETTLEMENT ................................................................. 1

        1.   Procedural History .......................................... 1

        2.   Summary of Plaintiff's Settled Claims Against Defendant ....................................................... 2

        3.   Settlement Negotiations ................................. 3

    B.   THE PARTIES' SETTLEMENT AGREEMENT ................................... 4

        1.   Overview of Terms and Settlement Administration ....... 4

        2.   Form of Notice to Settlement Class Members .............. 5

        3.   Opt-Out Right ................................................. 7

        4.   Right to Object ............................................... 8

        5.   Attorneys' Fees, Expenses, and Service Award ............. 8

III. ARGUMENT .................................................................... 8

    A.   CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE ... 9

        1.   The Prerequisites of Rule 23(a) Are Net ........................ 9

            a.   The Proposed Settlement Class Meets the Numerosity Requirement ................................... 10

b.    The Class Shares Common Questions of Law and Fact .................................................................. 10

c.    The Named Plaintiff's Claims Are Typical ....... 11

d.    The Class Representative's Interests Are Aligned with Those of the Settlement Class, and the Settlement Class Representative Will Vigorously Represent the Class Through Qualified Counsel ... ........................................................................... 12

2.    The Prerequisites of Rule 23(b) Are Met ..................... 13

a.    Common questions of law or Fact Predominate 14

b.    A Class Action Is the Superior Vehicle for Adjudication ....................................................... 15

B.    THE SETTLEMENT TERMS ARE FAIR, REASONABLE, AND ADEQUATE AS SET FORTH UNDER RULE 23(E) ........................ 16

C.    THE PROPOSED SETTLEMENT MORE THAN SATISFIES THE STANDARD FOR PRELIMINARY APPROVAL ............................... 17

1.    The Settlement Is the Product of Serious, Informed, Non-Collusive Negotiations ................................................. 17

2.    The Settlement Has No Deficiencies............................ 18

3.    The Settlement Does Not Grant Preferential Treatment .. ........................................................................... 18

4.    The Settlement Falls Well Within the Range of Approval ........................................................................... 19

D.    THE COURT SHOULD APPROVE DISSEMINATION OF THE PROPOSED CLASS NOTICE ........................................................................ 20

IV.    CONCLUSION .................................................................. 21

# TABLE OF AUTHORITIES

## Cases

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591(1997)............................. 9

*Armstrong v. Board of Sch. Directors*, 616 F.2d 305 (7th Cir. 1980)........... 9

*Ashby v. Farmers Ins. Co. of Oregon*, 592 F. Supp. 2d 1307 (D. Or. 2008) ..
.................................................................................................... 15, 20

*Campos v. ChoicePoint, Inc.*, 237 F.R.D. 478 (N.D. Ga. 2006) ................ 11

*Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492 (E.D. Pa. 2009) .......
.................................................................................................... 11, 14

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) .................. 20

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992)........... 9, 16

*Franks v. Kroger Co.*, 649 F.2d 1216 (6th Cir. 1981) on reh'g, 670 F.2d 71
(6th Cir. 1982) .............................................................................. 9

*Gillespie v. Equifax Info. Servs., LLC*, 05 C 138, 2008 WL 4614327(N.D. Ill.
Oct. 15, 2008) ................................................................................ 11

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)............... 20

*Grannan v. Alliant Law Grp., P.C.*, C10-02803 HRL, 2012 WL 216522
(N.D. Cal. Jan. 24, 2012).................................................................... 15

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)........ 10, 11, 12, 17

*Harris v. Vector Mktg. Corp.*, C-08-5198 EMC, 2011 WL 1627973 (N.D.
Cal. Apr. 29, 2011)............................................................................ 17

*Hawkins v. S2Verify*, No. C 15-03502 WHA, 2016 WL 3999458 (N.D. Cal.
July 26, 2016) ................................................................ 10, 12, 14, 16

*In re Charles Schwab Corp. Secs. Litig.*, No. 08-01510, 2011 WL 1481424
(Apr. 19, 2011) ................................................................................ 16

*In re Farmers Ins. Co., Inc., FCRA Litig.*, 741 F. Supp. 2d 1211 (W.D. Okla.
2010)................................................................................ 15, 20

*In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997) ... 20

*Massey v. On-Site Manager, Inc.*, 285 F.R.D. 239 (E.D.N.Y. 2012) .............

........................................................................................ 10, 12, 14, 16

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006) ................. 15

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) .......................... 9

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ................................ 7

*Riker v. Gibbons*, 2010 WL 4366012 (D. Nev. Oct. 28, 2010) .................. 17

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ...................... 18

*San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d
    1021 (N.D. Cal. 1999) ............................................................. 4, 8, 9

*Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402 (E.D. Pa. 2010) ..
    ........................................................................................ 11

*Stanton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) .................................. 18

*Summerfield v. Equifax Info. Servs. LLC*, 264 F.R.D. 133 (D.N.J. 2009) .. 11

*Williams v. LexisNexis Risk Mgmt. Inc.*, CIV A 306CV241, 2007 WL
    2439463 (E.D. Va. Aug. 23, 2007) .................................................. 11

**Federal Statutes**

15 U.S.C. § 1681c ............................................................................ 3, 4, 10

15 U.S.C. § 1681n ............................................................................ 14, 19

**Other Authorities**

Fed. R. Civ. P. 23, *et seq.* ................................................................. *passim*

5 Moore's Federal Practice § 23.83[a], at 23-336.2 to 23-339 .................. 17

MANUAL FOR COMPLEX LITIGATION § 30.41, at 236 (3d ed. 1995) ........... 16

NEWBERG ON CLASS ACTIONS § 11:25 (5th ed.) ......................................... 17

## I.      INTRODUCTION

Named Plaintiff John Smith ("Plaintiff"), individually and on behalf of the Settlement Class[1], seeks preliminary approval of the proposed Settlement Agreement with Defendant A-Check America Inc. d/b/a A-Check Global ("Defendant" or "A-Check").  The Settlement Agreement between Plaintiff and Defendant (collectively, the "parties"), if approved, will resolve all claims of the Plaintiff and all members of the Class in exchange for Defendant's agreement to undertake various changes in its practices, and to pay four hundred thousand dollars ($400,000) into a common settlement fund.

The proposed Settlement of this action is the product of hard-fought and lengthy arm's-length negotiations by experienced and informed counsel and warrants preliminary approval, as the terms are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

## II.     RELEVANT FACTS

### A.      THE PARTIES ENGAGED IN LITIGATION, FORMAL AND INFORMAL DISCOVERY, AND MEDIATION BEFORE REACHING THIS SETTLEMENT

#### 1.      Procedural History

Prior to reaching the Settlement Agreement in this matter, this case was actively litigated.  On December 3, 2015, Plaintiff Smith filed his proposed class action against A-Check in the Superior Court of the State of California. On January 29, 2016, A-Check removed the lawsuit to this Court.   On February 17, 2016, Plaintiff filed his First Amended Complaint ("FAC"). (ECF No. 15.)  On behalf of himself and the proposed class, Plaintiff Smith

---

[1] Unless otherwise explicitly defined herein, all terms have the same meanings as those set forth in the Class Action Settlement Agreement ("Settlement Agreement" or "Settlement"), attached to the Declaration of Joseph C. Hashmall ("Hashmall Dec.") as Exhibit 1.

sought statutory damages of between $100 and $1000 per violation, plus attorneys' fees, costs, and all other available relief. *Id.* Defendant moved to dismiss the FAC, a motion the Court denied. (ECF Nos. 28, 35.) Defendant filed its Answer on May 6, 2016. (ECF. No. 36.)

During the litigation, the parties exchanged numerous pieces of information through both formal and informal discovery. In formal discovery, both parties produced hundreds of pages of documents, and Plaintiff also received significant discovery from a third party subpoena directed at an industry organization. Hashmall Dec. ¶ 3. Additionally, Plaintiff deposed Defendant's Rule 30(b)(6) designee. *Id.* In advance of mediation, the parties also worked cooperatively to exchange information regarding how Defendant's electronic systems could be queried to identify members of the classes. *Id.* ¶ 4. In service of this effort, the parties engaged in numerous conference calls, some of which included technical consultants advising the parties on how best to extract information from Defendant's databases. *Id.* ¶ 5.

On December 1, 2016, the parties attended a full-day mediation. Prior to this successful mediation, both parties prepared mediation briefs indicating their positions on the merits of Plaintiff's claims and on an appropriate settlement value and structure. *Id.* ¶ 6. The mediation, conducted by Joan Kessler, an experienced third-party mediator, culminated in both parties signing a binding Terms Sheet, which served as the basis for the instant Settlement Agreement. *Id.* ¶ 7.

### 2. Summary of Plaintiff's Settled Claims Against Defendant

All the settled claims relate to background checks that Defendant produced on job applicants. As expressed in the First Amended Complaint

(ECF No. 15.), the FCRA prohibits a consumer reporting agency ("CRA" or "agency") from including non-conviction adverse information older than seven years.

Plaintiff Smith alleged that Defendant violated the FCRA by producing a background report that included information relating to non-convictions that predated the report by more than seven years.

Defendant denies any liability for these claims.

To avoid the further costs and burdens of litigation, the parties have agreed to settle the claims.  The proposed Settlement Class consists of the approximately 2,717 persons who Defendant has identified as (1) having been the subject of a background report prepared by A-Check, (2) whose background report contained one or more items of criminal information which were non-convictions predating the report by more than seven years, and (3) whose report was issued at any time dating from February 17, 2014 to the date of the Settlement Agreement, January 27, 2017.   Ex. A., Settlement Agreement, ¶ 27.

The Settlement Class Members will release all claims arising under 15 U.S.C. § 1681c of the FCRA and any analogous state law claims.

### 3.    Settlement Negotiations

On December 1, 2016, the parties engaged in a full day of vigorous, arm's-length negotiations in a mediation with Joan Kessler.  At the conclusion of this mediation, the parties reached an agreement as to the material terms of a settlement.  While the parties negotiated the case, the parties did not negotiate any terms relating to attorneys' fees for Plaintiff's counsel or incentive awards for the Named Plaintiff until after all other material terms were agreed upon. Settlement, ¶ 36-37.  The material terms of the Settlement were reduced to a terms sheet signed at the conclusion of mediation.   In negotiations over

subsequent weeks, a full Settlement Agreement was reached and executed.

### B.   THE PARTIES' SETTLEMENT AGREEMENT

#### 1.   Overview of Terms and Settlement Administration

In consideration for the release of the Settlement Class Members' claims, A-Check has, first, implemented an automated process to screen out information that should not be reported under 15 U.S.C. § 1681c. Ex. A, Settlement Agreement ¶ 30. Defendant agrees to keep this process in place for at least two years after the Settlement's Effective Date unless the Defendant believes in good faith that a change in existing law warrants a departure from this practice.

Second, Defendant has implemented procedures to ensure that criminal charges which are dismissed due to amendment prior to conviction are no longer reported after seven years. Ex. A, Settlement Agreement ¶ 31. Defendant agrees to keep this process in place for at least two years after the Settlement's Effective Date unless the Defendant believes in good faith that a change in existing law warrants a departure from this practice.

Third, Defendant agrees to provide Class Members who request a copy of their background report with a copy, free of charge. Ex. A., Settlement Agreement ¶ 32. The benefit of these three non-monetary provisions is substantial both for Settlement Class Members and future applicants for employment who have their background reports prepared by A-Check.

Finally, A-Check will deposit the Gross Settlement Amount ("GSA") of $400,000 with the Settlement Administrator for the benefit of the Class. Settlement Agreement ¶ 33.

After the deductions for any Court-awarded attorneys' fees, litigation expenses, settlement administration costs, and Named Plaintiff service award, this fund will be distributed to all Settlement Class Members who do not opt

out.  *Id.*, ¶ 20.  Defendant, in assembling the class list, shall note which Settlement Class Members had outdated information related to criminal charges on their reports, and which Settlement Class Members had only outdated information related to traffic offenses on their reports.  The net settlement fund shall be distributed to Settlement Class Members such that individuals with any outdated criminal charges on their reports shall receive a payment four times greater than those with only outdated traffic violations on their reports.  *Id.*, ¶ 35.

If settlement checks are not cashed, those funds will be donated to the cy *pres* recipient, the Southern Center for Human Rights in Atlanta, subject to Court approval.  *Id.*, ¶¶ 15, 39.  No portion of the settlement fund will revert to the Defendant in any circumstance.  *Id.* ¶ 34.

After a competitive bidding process, class counsel has selected Kurzman, Carson Consultants, an independent third party, to serve as the Settlement Administrator in this case.  Settlement Agreement, ¶ 26.  The Settlement Administrator will undertake mailing notice, mailing of settlement payments, and other administrative tasks.  *Id.*, ¶¶ 41-44.  All fees and expenses charged by the administrator will be deducted from the settlement fund, up to a total of $23,000, subject to Court approval.  *Id.*, ¶ 38.

### 2.    Form of Notice to Settlement Class Members

The parties have agreed to a notice procedure which will ensure that Class Members receive notice of the Settlement by making settlement information available via two means: direct mail and a settlement website.  First, the parties have agreed to the Postcard Notice attached as Exhibit B to the Settlement Agreement, subject to the Court's approval.

The Postcard Notice, a double-sided postcard, will inform Class Members of the basic information about the Settlement, and will be mailed via

first-class U.S. mail to each Settlement Class Member. *See* Settlement Agreement, Ex. B.  The Postcard Notice will also inform Class Members of a variety of means to receive additional information about the Settlement, including the URL of the settlement website – which will include the long-form notice described below – and the toll-free telephone number which can be used to provide Class Members with information about the Settlement and will allow Class Members to provide their updated contact information. *Id*. The Postcard Notice will be mailed, by first-class mail, to each known Settlement Class Member at the last known available address in A-Check's database, as updated by the National Change of Address Database.  Settlement Agreement ¶ 42.

On the settlement website, the Long Form Class Notice will be made available, as will a number of other important documents regarding the Settlement.  Among other things, the Long Form Class Notice, attached as Exhibit E to the Settlement Agreement, informs Class Members of:

a.  The subject matter of this lawsuit;

b.  The material terms of the Settlement Agreement, including the amount of recovery and the manner in which the settlement fund will be divided;

c.  The scope of the release;

d.  The right to object to the proposed Settlement, and the deadlines and procedures for doing so;

e.  The right to opt-out of the proposed Settlement, and the deadlines and procedures for doing so;

f.  The fact that if Class Members do not opt out of the Settlement Class, they will be bound by the Settlement;

g.  The proposed deductions from the settlement fund,

including both the percentage and amount to be requested by class counsel, and the amount to be requested for the Named Plaintiff's service award; and

h.      The date, time and location of the Final Fairness Hearing.

When, as here, Class Members and their addresses can be ascertained, notification by mail is the best notice practicable and meets the due process requirements of Fed. R. Civ. P. 23(c).  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).  In an effort to ensure the efficacy of the notice program, however, the parties have also agreed to undertake two additional efforts to provide notice to the Class.  First, the parties have agreed to implement a settlement website established and maintained by the Settlement Administrator which will contain additional information about the Settlement and allow Class Members to update their addresses.  Settlement Agreement ¶ 43.  Second, the Settlement Administrator will establish a toll-free telephone number with an Interactive Voice Response system to provide Class Members with information about the Settlement and allow Class Members to provide their updated contact information.  *Id.*, ¶ 44.

These extensive efforts to provide notice to the Class are "the best notice that is practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B).  A-Check will also comply with the notice requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b), by providing notice of this proposed Settlement to appropriate state officials for each state in which a Named Plaintiff or Settlement Class Member resides and upon the U.S. Attorney General.  Settlement Agreement, ¶ 15.

### 3.      Opt-Out Right

The parties propose that the Settlement Class be certified pursuant to Fed. R. Civ. P. 23(b)(3).  Settlement Class Members may send opt-out requests

to the address contained in the Notice, and the Settlement Administrator will maintain that address.  Settlement Agreement, ¶ 22, 45.  The deadline for Class Members to opt out of the Settlement will be forty-five days after the date notices are mailed.  *Id.*

### 4.   Right to Object

Class Members who wish to object to the Settlement Agreement must file a written statement of objection with the Clerk of Court, and mail the same to the Settlement Administrator no later than the Objections Deadline, which will be forty-five days after the date notices are mailed.  *Id.*, ¶¶ 22, 46. Settlement Class Members who fail to make objections in the manner specified above shall be deemed to have waived their objections.  *Id.*, ¶ 46.

### 5.   Attorneys' Fees, Expenses, and Service Award

The Settlement Agreement states that class counsel's fees and service awards for the Named Plaintiff are to be deducted from the fund, subject to Court approval.  Settlement Agreement ¶ 20.  Counsel is authorized to petition for up to one-third percent of the fund as attorneys' fees, as well as documented, customary expenses, and $3,500 for the Class Representative as a service award.  *Id*. ¶¶ 36-37.  Class counsel will formally make this request no later than fourteen (14) days before the Opt-Out and Objection Deadline, and will post the motion papers on the settlement website, so that Class Members will have a chance to review them before deciding whether to object or opt out.  *Id.* ¶ 52.  Neither settlement approval nor the size of the settlement fund are contingent upon approval of any requested fees or class representative service awards.

## III.   ARGUMENT

Federal courts favor the voluntary resolution of litigation through settlement, particularly in the class action context.  *San Francisco NAACP v.*

1   *San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1029 (N.D. Cal. 1999)

2   ("There is a strong judicial policy in favor of settlements in complex class

3   actions"); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.

4   1992) (noting "strong judicial policy that favors settlements, particularly

5   where complex class action litigation is concerned"); *Armstrong v. Board of

6   Sch. Directors*, 616 F.2d 305, 312-13 (7th Cir. 1980); *Franks v. Kroger Co.*,

7   649 F.2d 1216, 1224 (6th Cir. 1981) on reh'g, 670 F.2d 71 (6th Cir. 1982);

8   *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999).

9        These considerations apply here.  For the reasons set forth below, the

10   Court should grant preliminary approval of the Settlement, and authorize the

11   issuance of notice to the Class.

12        **A.   CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE**

13        The parties request that the Court certify the Settlement Class under

14   Federal Rule of Civil Procedure 23 for settlement purposes only.  Even a class

15   certified for settlement purposes must satisfy the requirements for class

16   certification pursuant to Rule 23, though the Court "need not inquire whether

17   the case, if tried, would present intractable management problems, *see* Fed. R.

18   Civ. P. 23(b)(3)(D), for the proposal is that there be no trial."  *Amchem

19   Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  The proposed Settlement

20   Class here meets the prerequisites for certification under Rule 23(a) and

21   23(b)(3).

22        **1.   The Prerequisites of Rule 23(a) Are Met**

23        Under Rule 23(a), a class may be certified only when (1) the class is so

24   numerous that joinder of all members is impracticable; (2) there are questions

25   of law or fact common to the class; (3) the claims or defenses of the

26   representative parties are typical of the claims or defenses of the class; and (4)

27   the representative parties will fairly and adequately protect the interests of the

28

class.  The proposed Settlement Class meets these requirements.

### a. The Proposed Settlement Class Meets the Numerosity Requirement

Fed. R. Civ. P. 23(a)(1) requires a proposed class be "so numerous that joinder of all members is impracticable."  In this case, where the Class consists of approximately 2,717 people, there is no question that the numerosity requirement is met.

### b. The Class Shares Common Questions of Law and Fact

A proposed class satisfies the "commonality" requirement "if there are questions of fact and law which are common to the class."  Fed. R. Civ. P. 23(a)(2).  This requirement, however, has been

> construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

Commonality has been found in similar cases in which it was alleged a consumer reporting agency reported outdated adverse information in violation of 15 U.S.C. § 1681c.  *Hawkins v. S2Verify*, No. C 15-03502 WHA, 2016 WL 3999458, at *3 (N.D. Cal. July 26, 2016) (finding commonality, certifying class based on claim of reporting of outdated criminal information); *Massey v. On-Site Manager, Inc.*, 285 F.R.D. 239, 244 (E.D.N.Y. 2012) (finding commonality, certifying class, in case where consumer reporting agency reported outdated information on class members' reports)

FCRA classes are frequently certified in cases in which a defendant's uniform policies and procedures impacted class members in the same way.

*See, e.g*; *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402 (E.D. Pa. 2010) (finding commonality and certifying FCRA class when defendant consumer reporting agency's consumer reports all contained the same illegal statement regarding outdated information); *Campos v. ChoicePoint, Inc.*, 237 F.R.D. 478, 485 (N.D. Ga. 2006) (finding commonality and certifying FCRA class when defendant consumer reporting agency consistently and as a matter of policy failed to provide full file disclosures to consumers who requested them); *Summerfield v. Equifax Info. Servs. LLC*, 264 F.R.D. 133, 139 (D.N.J. 2009) (finding commonality and certifying FCRA class when consumer reporting agency sent allegedly misleading form letter to consumers who disputed information on their reports); *Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492 (E.D. Pa. 2009) (same); *Gillespie v. Equifax Info. Servs., LLC*, 05 C 138, 2008 WL 4614327, *4 (N.D. Ill. Oct. 15, 2008) (finding commonality and certifying FCRA class when consumer reporting agency's standard procedure allegedly caused inaccurate reporting); *Williams v. LexisNexis Risk Mgmt. Inc.*, CIV A 306CV241, 2007 WL 2439463 (E.D. Va. Aug. 23, 2007) (finding commonality and certifying FCRA class when claim revolved around consumer reporting agency's procedures for notifying class members that adverse public record information about them was being reported).

Because the core question in this case is whether Defendant's reporting of outdated information violated the FCRA, commonality has been established.

### c.   The Named Plaintiff's Claims Are Typical

A named plaintiff's claims are typical if "they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

In this case, Named Plaintiff's claims are identical to the claim of every other Class Member, and are based upon the same legal theory.  When every member of the Class, including Named Plaintiff, suffered the same FCRA violation based upon Defendant's preparation of background reports with criminal information more than seven years old, it is manifestly clear that Named Plaintiff's claims are typical.  Claims of this sort are routinely found typical.  See *Hawkins*, 2016 WL 3999458, at *4 ("Plaintiff's claims are typical of the class. Like potential class members, his consumer report contained non-conviction criminal history older than seven years."); *Massey*, 285 F.R.D. at 245 ("plaintiff has demonstrated that she is typical of the class. Defendant issued a report about her that illegally contained outdated information as a result of the flaw in defendant's system, just as it did, by definition, for every class member").

              d.     <u>The Class Representative's Interests Are Aligned with Those of the Settlement Class, and the Class Representative Will Vigorously Represent the Class Through Qualified Counsel</u>

To make a determination on adequacy, the Court must evaluate both the Named Plaintiffs and their counsel:

> Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?

*Hanlon*, 150 F.3d at 1020.

The resolution of the first question is simple: the Named Plaintiff and his counsel have no known conflicts of interest with the Class.  Hashmall Dec. ¶ 8.  Second, both the Named Plaintiff and his counsel have vigorously worked

1    in the best interest of the Class, and will continue to do so. *Id.* ¶ 9.

2       The Named Plaintiff has been actively engaged in this case. He

3    understands what it means to be a class representative and will put the interests

4    of the Class first in making all decisions related to this case. He has reviewed

5    the Settlement Agreement and believes that it is in the best interest of the Class.

6    *Id.* ¶ 10. Furthermore, the Named Plaintiff's actions demonstrate his

7    involvement in, and dedication to, this litigation. Named Plaintiff has provided

8    counsel with extensive documentation regarding his experiences with

9    Defendant, stayed abreast of developments in this case, and evaluated and

10    executed the Settlement Agreement. *Id.* ¶ 11.

11       Second, Named Plaintiff's counsel is highly experienced in complex

12    class action litigation and consumer litigation in general. *See* Hashmall Dec.,

13    Ex. 2, Firm Resume. Berger & Montague ("Berger") was founded in 1970,

14    and has been concentrated on representing plaintiffs in complex class actions

15    ever since. *Id.* The firm has been recognized by courts for its skill and

16    experience in handling major complex litigation. *Id.* Berger has been

17    recognized by the National Law Journal in 11 of the last 15 years for its "Hot

18    List" of top plaintiffs' oriented litigation firms in the nation. *Id.*

19       In sum, the numerosity, commonality, typicality, and adequacy

20    requirements of Rule 23(a)(1)–(4) are met here.

21          **2.      The Prerequisites of Rule 23(b) Are Met**

22       The Settlement Class's claims also meet the predominance and

23    superiority prerequisites of Fed. R. Civ. P. 23(b)(3). In evaluating this prong,

24    the court may consider Class Members' interests in prosecuting their claims

25    individually, the extent and nature of litigation thus far, and the desirability of

26    concentrating the litigation in the particular forum. Fed. R. Civ. P.

27    23(b)(3)(A)–(C). In the context of a class-wide settlement, the court need not

28

consider whether the case, if tried, would present difficult management problems. *Amchem*, 521 U.S. at 620.  Those requirements are met in this case.

### a.      Common Questions of Law or Fact Predominate

When considering predominance, the core issue is "whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.

In this case, three class-wide issues predominate over any individual concerns.  First and most important is the question of whether the preparation of reports by Defendant that included criminal non-convictions older than seven years violated the FCRA.  Because each Class Member was a subject of one of these particular background reports, a determination of this question will completely obviate the need for an examination of any individual issues relative to individual Class Members. *Hawkins*, 2016 WL 3999458, at *6 (The question of whether these practices [reporting outdated criminal information] violated the FCRA, and whether any such violations were willful, can be demonstrated on a class-wide basis."); *Massey*, 285 F.R.D. at 245 (finding commonality, because "the central issues of whether defendant issued reports containing obsolete information about members of the class and whether it did so willfully can be proved on a generalized basis through records and testimony from defendant.")

Second, the willfulness of Defendant's violation presents a critical common question.  The ability of Class Members to obtain statutory damages is contingent upon a finding that Defendant's violation was willful.  15 U.S.C. § 1681n(a)(1).   Because Defendant is a single entity, which prepared background reports in the same manner for every member of the Class, the answer to the question of whether Defendant's violation was willful can be determined on a class-wide basis. *Chakejian*, 256 F.R.D. at 500 ("Thus, the

1    inquiry is to [defendant's] state of mind in implementing its policies and

2    procedures, not on the customer's particular interaction with the CRA…. To

3    prove willfulness here, a consumer-by-consumer inquiry is not necessary."").

4    Again, Defendant denies any liability for these claims or that it acted willfully.

5         Third, if this case were litigated, the amount of damages could also be

6    determined on a class-wide basis.  Because Plaintiffs sought statutory and

7    punitive damages, no individual analysis of damages would be required.  *See*

8    *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952-53 (7th Cir. 2006).  In

9    determining the amount of statutory damages to impose pursuant to the FCRA,

10   courts have looked to "the importance, and hence the value, of the rights and

11   protections" at issue in the case. *Ashby v. Farmers Ins. Co. of Oregon*, 592 F.

12   Supp. 2d 1307, 1318 (D. Or. 2008); *In re Farmers Ins. Co., Inc., FCRA Litig.*,

13   741 F. Supp. 2d 1211, 1224 (W.D. Okla. 2010).  Consideration of this factor

14   requires no individual analysis.  Thus, virtually every aspect of this case can

15   be determined on a class-wide basis, and the predominance requirement is met.

16              b.    A Class Action Is the Superior Vehicle for
17                    Adjudication

18        To be certified, a class action must be "superior to other available

19   method for fairly and efficiently adjudicating the controversy."  Fed. R. Civ.

20   P. 23(b)(3).  Again, in the settlement context, the Court need not address the

21   manageability requirements of Rule 23(b)(3)(D).  *Amchem*, 521 U.S. at 620.

22   Courts in this district have found that "[i]f no viable alternative to a class action

23   is available, the class action is necessarily the superior method of adjudication.

24   Where plaintiffs' anticipated award is relatively small, class actions . . . may

25   permit the plaintiffs to pool claims which would be uneconomical to litigate

26   individually." *Grannan v. Alliant Law Grp., P.C.*, C10-02803 HRL, 2012 WL

27   216522, *5 (N.D. Cal. Jan. 24, 2012) (internal citation and quotation omitted).

28

1    Such is the case here.

2            In a matter such as this, where the claims of all Class Members are

3    identical and are based on the same common core of facts, it is clear that

4    adjudicating this matter as a class action will achieve economies of time, effort,

5    and expense, and promote uniformity of results. *Hawkins*, 2016 WL 3999458,

6    at \*6 (noting amount of statutory damages, finding that "[a]bsent a class action,

7    individuals would be unlikely to pursue such a relatively small claim given the

8    costs of litigation. A class action is therefore a superior method for resolving

9    these disputes."); *Massey*, 285 F.R.D. at 245 (finding superiority).

10
11            **B.    THE SETTLEMENT TERMS ARE FAIR, REASONABLE, AND
                       ADEQUATE AS SET FORTH UNDER RULE 23(E)**

12            Under Fed. R. Civ. P. 23(e), court approval is required for any

13    settlement agreement that will bind absent class members.  *In re Charles*

14    *Schwab Corp. Secs. Litig.*, No. 08-01510, 2011 WL 1481424, at \*4 (Apr. 19,

15    2011).    This involves a "two-step process."    MANUAL FOR COMPLEX

16    LITIGATION § 30.41, at 236 (3d ed. 1995).

17            First, counsel submit the proposed terms of the Settlement to the court,

18    and the court makes a preliminary fairness evaluation.  *Id*.

19            Second, following preliminary approval of the Settlement, Class

20    Members are provided notice of a formal fairness hearing, at which time

21    arguments and evidence may be presented in support of, or in opposition to,

22    the Settlement.  *Id.*

23            The determination of whether a proposed Settlement is fair falls within

24    the sound discretion of the district court.  *Class Plaintiffs v. City of Seattle*, 955

25    F.2d 1268, 1276 (9th Cir. 1992).    However, this discretion is exercised

26    somewhat differently, depending on whether preliminary or final approval is

27    being sought.  At the preliminary approval stage, the court is not required to

28

1  answer the ultimate question of whether the settlement is fair, reasonable, and

2  adequate.  *See* 5 Moore's Federal Practice § 23.83[a], at 23-336.2 to 23-339.

3  Rather, the court simply makes an initial determination concerning whether

4  the Settlement

> (1) appears to be the product of serious, informed, non-collusive
> negotiations; (2) has no obvious deficiencies; (3) does not
> improperly grant preferential treatment to class representatives
> or segments of the class; and (4) falls within the range of possible
> approval.

9  *Harris v. Vector Mktg. Corp.*, C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal.

10 Apr. 29, 2011).  In the absence of any "obvious deficiencies," preliminary

11 approval should be granted, and notice of the settlement should be directed to

12 the Class so that Class Members may have a chance to be heard.  NEWBERG

13 ON CLASS ACTIONS § 11:25, *supra*.

14 
15        **C.    THE PROPOSED SETTLEMENT MORE THAN SATISFIES THE
               STANDARD FOR PRELIMINARY APPROVAL**

16        The proposed Settlement Agreement in this case, which provides for

17 substantial prospective relief and a non-reversionary monetary recovery of

18 $400,000, more than meets the standard for preliminary approval.

19 
20              **1.    The Settlement Is the Product of Serious, Informed,
                    Non-Collusive Negotiations**

21        As recounted above, the Settlement in this case was the result of arm's-

22 length negotiations facilitated by an experienced and well-respected mediator

23 after substantial pre-mediation discovery.  *See* § III.A.3, *infra*.  "An initial

24 presumption of fairness is usually involved if the settlement is recommended

25 by class counsel after arm's-length bargaining."  *Riker v. Gibbons*, 2010 WL

26 4366012, at *2 (D. Nev. Oct. 28, 2010); *see also Hanlon*, 150 F.3d at 1027

27 (affirming approval of settlement after finding "no evidence to suggest that the

28

settlement was negotiated in haste or in the absence of information illuminating the value of plaintiffs' claims.").

### 2.     The Settlement Has No Deficiencies

This settlement achieves a remarkable recovery for the Class, and contains none of the deficiencies which can stand in the way of judicial approval.  For instance, the totality of the Settlement will be paid out; there is no reversion to the Defendant.  All deductions from the settlement fund, such as attorneys' fees, settlement administration expenses and Named Plaintiff service awards, require judicial approval, and the Settlement is not contingent upon approval of the requested amounts.

Additionally, there is no claim form or other unduly burdensome process in place in this proposed Settlement.  Rather, every Class Member who does not opt out will receive a payment from the net settlement fund.  Class Members do not need to take any action whatsoever in order to receive their payment, making the process as easy as possible.

### 3.     The Settlement Does Not Grant Preferential Treatment

Preferential treatment is also not a concern in this case.  The Settlement does call for higher settlement payments for those whose reports contained criminal information older than seven years, as opposed to traffic or other type of information, but this is a rational distinction based on the determination that this population was more likely to have lost a job opportunity based on the reporting of the information at issue.

Further, the settlement does call for a service award for the Named Plaintiff, but that award is subject to the Court's review and approval.  The Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable. *See Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003); *Rodriguez v. W.*

1   *Publ'g Corp.*, 563 F.3d 948, 958-69 (9th Cir. 2009).

2
3   ### 4.   The Settlement Falls Well Within The Range of Approval

4   The Settlement in this case is impressive when considering the range of
5   possible recoveries for the Class, the Defendant's affirmative defenses, and the
6   number of procedural hurdles between Plaintiffs and a final judgment.  While
7   the exact amount that each Class Member will recover is unknown until the
8   amount of attorneys' fees, Class Representative awards, and administration
9   costs are finalized, the Gross Settlement Amount of $400,000 is substantial,
10  and Class Members are likely to recover a substantial portion of what they
11  could have recovered in litigation.  In circumstances such as this, where a
12  settlement fund is calculated to pay out in its entirety, and where class
13  members are likely to receive a good result, a settlement should be approved.

14  This recovery is substantial.  Plaintiffs filed this case seeking statutory
15  damages under the FCRA, which provides for damages of between $100 and
16  $1000 for each willful violation.  15 U.S.C. § 1681n(a)(1).  The settlement
17  here, a $400,000 fund for a class of 2,717 individuals, is just shy of $150 per
18  Class Member – well within the range of recovery.[2]  Additionally, the FCRA
19  itself does not provide any guidance to courts in choosing the appropriate
20  recovery for a statutory violation, *see* 15 U.S.C. § 1681n(a)(1), but in
21  determining the amount of statutory damages to impose pursuant to the FCRA,
22  courts have looked to "the importance, and hence the value, of the rights and

23

24  ───────────────
[2] This number is based on the simple division of the gross settlement fund by
25  the number of Class Members, and is not an indication of the amount that each
    Class Member will receive.  As described above, the actual recovery for each
26  Class Member will depend on (1) the amount of attorneys' fees, costs and class
    member service award approved by the Court, and (2) the relative proportion
27  of the class with criminal, rather than traffic, charges on their reports.

28

protections" at issue in the case.  *Ashby*, 592 F. Supp. 2d at 1318; *In re Farmers Ins. Co., Inc., FCRA Litig.*, 741 F. Supp. 2d at 1224.  It is uncertain here how much the court would choose to award for statutory damages.  A recovery of a substantial percentage of the likely award if this case had proceeded all the way through final judgment is an excellent recovery for the Class.  *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n. 2 (2d Cir. 1974) ("there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery") *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

The impressive nature of this recovery comes into even sharper focus when the risks of further litigation are considered.  Plaintiff had yet to survive a motion for class certification, summary judgment or trial.  Plaintiff was confident that these obstacles could have been overcome, but each of these phases of litigation presents serious risks, which the Settlement allows Named Plaintiff and Class Members to avoid.  *See, e.g.*, *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks.").

Viewed in the context of the litigation risks faced, as well as the substantial delay and costs that Class Members would have experienced in order to receive proceeds from an adversarially-obtained judgment, not to mention the judicial resources required, this Settlement is in the best interests of the Named Plaintiff and the Settlement Class Members, and should be approved.

### D.   THE COURT SHOULD APPROVE DISSEMINATION OF THE PROPOSED CLASS NOTICE

With this motion, Plaintiff has provided two forms of proposed class

1   notice: one to be sent to all Class Members by first-class mail and one to be

2   posted on the settlement website.  Settlement Agreement, Exs. B, E.  These

3   proposed notices include all of the information required by Fed. R. Civ. P.

4   23(c)(2)(B).  The Long Form Notice, which is to be posted at the settlement

5   website, and which the Postcard Notice directs Class Members to consult,

6   contains details about the definition of the Class, the proposed class counsel,

7   the size of the settlement fund, the methodology for opting out of or objecting

8   to the Settlement, the potential size of Plaintiff's request for attorneys' fees,

9   expenses, and Class Representative incentive awards, and the date and location

10  of the final approval hearing.  This notice program exceeds the requirements

11  of Fed. R. Civ. P. 23, and should be approved.

12  **IV.    CONCLUSION**

13          Based on the foregoing, the Court should grant preliminary approval to

14  the proposed Settlement.

15

16  Dated:  January 30, 2017

17

18   COUNSEL FOR PLAINTIFF
                                BERGER & MONTAGUE, P.C.
19

20   Dated:  January 30, 2017          By: /s/ *Joseph C. Hashmall*
21                                     E. Michelle Drake
                                       emdrake@bm.net
22                                     Joseph C. Hashmall
23                                     jhashmall@bm.net
                                       43 SE Main Street, Suite 505
24                                     Minneapolis, MN 55414
25                                     Tel: 612.594.5999
                                       Fax: 612.584.4470
26

27                                     LAW OFFICES OF ROBERT F.

28
_____

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BRENNAN APC
Robert F. Brennan, SBN 132449
3150 Montrose Avenue
La Crescenta, CA 91214

FRANCIS & MAILMAN, P.C.
James A. Francis
jfrancis@consumerlawfirm.com
David A. Searles
dsearles@consumerlawfirm.com
Land Title Bldg, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
Tel: 215.735.8600
Fax: 215.940.8000

THE TATAR LAW FIRM, APC
Stephanie R. Tatar, SBN 237792
stephanie@thetatarlawfirm.com
3500 West Olive Ave, Suite 300
Burbank, CA 91505
Tel: 323.744.1116
Fax: 888.778.5695

NICHOLS KASTER, PLLP
Eleanor E. Frisch (SBN 304408)
E-mail:  efrisch@nka.com
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone:   (612) 256-3200
Facsimile:    (612) 338-4878

COUNSEL FOR DEFENDANT

SEYFARTH SHAW LLP

Dated: January 30, 2017

By:  /s/ *Pamela Q. Devata*
        Pamela Q. Devata
        E-mail: pdevata@seyfarth.com

1   131 South Dearborn Street, Suite 2400
    Chicago, Illinois 60603
2   Telephone: (312) 460-5000
    Facsimile: (312) 460-7000
3

4   SEYFARTH SHAW LLP
    Timothy L. Hix (SBN 184372)
5   E-mail: thix@seyfarth.com
6   333 S. Hope Street, Suite 3900
    Los Angeles, California 90071
7   Telephone: (213) 270-9600
    Facsimile: (213) 270-9601
8

9   SEYFARTH SHAW LLP
10  Jonathan L. Brophy (SBN 245223)
    E-mail: jbrophy@seyfarth.com
11  Monica Rodriguez (SBN 299026)
12  E-mail: morodriguez@seyfarth.com
    2029 Century Park East, Suite 3500
13  Los Angeles, California 90067-3021
14  Telephone: (310) 277-7200
    Facsimile: (310) 201-5219
15

16

17

18

19

20

21

22

23

24

25

26

27

28