## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA



FILED
CLERK, U.S. DISTRICT COURT

MAR 1, 2017

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ BH _____ DEPUTY

John Smith,

                 Plaintiff,

v.

A-Check America Inc. d/b/a A-Check
    Global,

                 Defendant.

EDCV 16-00174-VAP (KKx)

## ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (DOC. NO. 56)

On January 30, 2017, Plaintiff John Smith and Defendant A-Check America Inc. filed a Motion for Preliminary Approval of Class Action Settlement. (Doc. No. 56.) The Motion came on for hearing on February 27, 2017. Having considered the papers filed in support of the Motion, the Court GRANTS the Motion.

## I.  BACKGROUND

### A.  PROCEDURAL HISTORY

In Summer 2014, Plaintiff applied to work for Ricoh Logistics Corporation and was offered a job. (Doc. No. 15 at 4.) As part of the application process, Ricoh obtained a confidential background report regarding Plaintiff from Defendant A-Check America Inc., a consumer reporting agency. (Id.) After receiving Plaintiff's background report, Ricoh contacted Plaintiff and told him that he should not report for work on his start date because of information contained in his background report. (Id. at 4-5.)

In the operative complaint, Plaintiff asserts claims on behalf of himself and those similarly situated who were harmed by Defendant's conduct.  (Doc. No. 15 at 5.)  He alleges that Defendant negligently and willfully violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681c, by generating background reports that "contain[ed] one or more items of criminal information which are non-convictions, where such information antedates the report by more than seven years."  (Doc. No. 15 at 9.)  The alleged class includes "all individuals whose report was issued [by Defendant] at any time dating from five years prior to the filing of this matter through the date of final judgment in this action."  (Id.)

## B.  Settlement Class

The settlement agreement between Plaintiff and Defendant defines the settlement class as:

> All Persons were the subject of a background report prepared by Defendant, whose report contained one or more items of criminal information which were non-convictions, where such information antedated the report by more than seven years, and whose report was issued at any time dating from February 17, 2014 to the date of execution of this Agreement.

(Doc. No. 56-2 at 9.)  The "Parties, in good faith, estimate that the Settlement Class [is] comprise[d] of 2,717 individuals."  (Id.)

## C. Settlement Terms

The settlement agreement establishes a settlement fund of $400,000.  (Id. ¶ 33.)  Class Counsel may seek up to one-third of the settlement fund for attorneys' fees and may seek additional deductions for documented, customary expenses.  (Id. ¶ 36-37.)  The settlement agreement also entitles Plaintiff to a class representative award of $3,500 and the Settlement Administrator, Kurzman Carson Consultants, to $23,000 for its services.  (Id. ¶ 36-38.)  Both of those fees are to come out of the settlement fund.  (Id.)

The remaining portion of the settlement fund will be distributed to all class members who do not opt out.  (Id. ¶ 20.)  Defendant, in assembling the class list, shall note which participating class members had outdated information related to criminal charges on their reports and which participating class members had only outdated information related to traffic offenses on their reports.  (Doc. No. 56 at 14.)  The net settlement fund shall be distributed to class members such that class members with any outdated criminal charges on their reports shall receive a payment four times greater than those with only outdated traffic violations of their reports.  (Doc. No. 56-2 ¶ 34.)

In addition, Defendant has agreed to implement an automated process to screen out information that should not be reported under 15 U.S.C. § 1681c; implement procedures to ensure that criminal charges which are dismissed due to amendment prior to conviction are no longer reported after seven years; and provide class members who request a copy of their background report with a copy, free of charge.  (Doc. No. 56-2 ¶¶ 31-33.)  Defendant will maintain the first two practices in

place for at least two years unless the Defendant believes in good faith that a change in existing law warrants a departure from that practice.  (Id. ¶¶ 31-32.)

## II.   LEGAL STANDARD

"[S]trong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned."  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  When parties reach a settlement before class certification, courts must assess: (1) the propriety of the class certification and (2) the fairness of the settlement.  Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).  When reviewing the settlement, the Court should not endeavor to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."  City of Seattle, 955 F.2d at 1291.

At the preliminary approval stage, a court should approve a proposed settlement and give notice to the proposed class where "[1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval . . . ."  In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citing Federal Judicial Center, Manual for Complex Litigation § 30.44 (2d ed. 1985)).

Parties seeking class certification for settlement purposes must satisfy the requirements of Federal Rule of Civil Procedure 23.  Amchem Prods., Inc. v.

Windsor, 521 U.S. 591, 620 (1996).  A court considering such a request should give the Rule 23 certification factors "undiluted, even heightened, attention in the settlement context."  Id.

In addition to these requirements, a plaintiff must satisfy one of the three Rule 23(b) prongs to maintain a class action.  Here, Plaintiff seeks class certification under Rule 23(b)(3).  (Doc. No. 56 at 18.)  Where a plaintiff seeks class certification under Rule 23(b)(3), he or she must prove: "[1] the questions of law or fact common to class members predominate over any questions affecting only individual members, and [2] that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

Class action settlements must also satisfy the fairness and reasonableness standard of Rule 23(e).  Alberto v. GMRI, Inc., 252 F.R.D. 652, 664 (E.D. Cal. 2008).  Rule 23(e) states: "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Id. The Court must hold a hearing and find that the settlement "is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Review of a proposed settlement generally proceeds in two stages, a hearing on preliminary approval followed by a final fairness hearing.  See Federal Judicial Center, Manual for Complex Litigation, § 21.632 (4th ed. 2004).

At the preliminary approval stage, a court determines whether a proposed settlement is "within the range of possible approval" and whether or not notice should be sent to class members.  Vasquez v. Coast Valley Roofing, Inc., 670 F. Supp. 2d 1125 (E.D. Cal. 2009); In re Tableware Antitrust Litig., 484 F. Supp. 2d at

1079; In re Corrugated Container Antitrust Litig., 643 F.2d 195, 205 (5th Cir. 1981); Gautreaux v. Pierce, 690 F.2d 616, 621 n. 3 (7th Cir. 1982) (stating the purpose of a preliminary approval hearing is to "ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing"); Federal Judicial Center, Manual for Complex Litigation, § 21.632.

## III.  DISCUSSION

### A.  CLASS CERTIFICATION

Plaintiff seeks to certify the settlement class consisting of:

All Persons were the subject of a background report prepared by Defendant, whose report contained one or more items of criminal information which were non-convictions, where such information antedated the report by more than seven years, and whose report was issued at any time dating from February 17, 2014 to the date of execution of this Agreement.

(Doc. No. 56-2 at 9.)

### 1.    Ascertainable Class

Under Rule 23, "[a] class definition should be precise, objective and presently ascertainable," such that it is "administratively feasible to determine whether a particular person is a class member."  Allen v. Hyland's Inc., 300 F.R.D. 643, 658 (C.D. Cal. 2014) (citations omitted) (internal quotation marks omitted).  "The identity of class members need not, however, be known at the time of class certification."  Id.

Here, Plaintiff has "precisely defined the class based on objective criteria," specifically, that Defendants subjected class members to background reports which resulted in reports containing criminal information predating the report by more than seven years.  See Allen, 300 F.R.D. at 658.  It is "administratively feasible for the Court to determine whether a particular individual or entity is a member of the class . . . .  Evidence such as [background reports] could be used to identify class membership.  Moreover, Defendants do not argue that the proposed class is unascertainable."  See City of Huntington Park v. Landscape Structures, No. EDCV 14-00419-VAP (DTBx), 2015 WL 3948411, at *4 (C.D. Cal. 2015).  Accordingly, the class is ascertainable.

### 2.    Rule 23(a) Requirements

#### i.    Numerosity

Under Rule 23(a)(1), a class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "'[I]mpracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class."  Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913-14 (9th Cir. 1964).  "Although there is no exact number," courts have repeatedly held classes comprised of "more than forty" members presumptively satisfy the numerosity requirement.  See e.g., DuFour v. BE LLC, 291 F.R.D. 413, 417 (N.D. Cal. 2013) (citing Krzesniak v. Cendant Corp., No. 05-05156 MEJ, 2007 WL 1795703, at *7 (N.D. Cal. June 20, 2007).  "Where the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large, the numerosity requirement is satisfied."  Heffelfinger v. Elec. Data Sys. Corp., No. CV 07-00101 MMM (Ex), 2008 WL 8128621, at *13 (C.D. Cal. Jan. 7, 2008) (citations omitted) (internal quotation marks omitted).

Here, the Parties have represented that the class consists of approximately 2,717 persons.  (Doc. No. 56-2 at 9.)  As the class is comprised of "more than forty" members, Plaintiff has met his burden as to numerosity.  See DuFour, 291 F.R.D. at 417.

### ii.   Commonality

Commonality "requir[es] a plaintiff to show that 'there are questions of law or fact common to the class.'"  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349 (2011) (quoting Fed. R. Civ. P. 23(a)(2)).  Even a single common question will suffice.  See id. at 359.

Here, Plaintiff raises a single common question that resolves the dispute: "whether Defendant's reporting of outdated [criminal non-conviction] information violated the FCRA[?]"  (Doc. No. 56 at 20.)  As this question is capable of class-wide resolution, it satisfies the commonality requirement.  See Wal-Mart Stores, Inc., 564 U.S. at 359.

### iii.   Typicality

The Ninth Circuit in Hanlon v. Chrysler Corp. explained that "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  150 F.3d 1011, 1020 (9th Cir. 1998).  Thus, to find typicality, a "court does not need to find that the claims of the purported class representatives are identical to the claims of the other class members."  Haley v. Medtronic, Inc., 169 F.R.D. 643, 649 (C.D. Cal. 1996).

Here, Plaintiff's claims are typical of the class members' claims because "every member of the Class, included Named Plaintiff, suffered the same FCRA violation based upon Defendant's preparation of background reports with criminal information more than seven years old." (Doc. No. 56 at 21.)  Hence, typicality is satisfied.

### iv.    Adequacy of Representation

Finally, "[t]he named Plaintiff[] must fairly and adequately protect the interests of the class."  <u>Ellis v. Costco Wholesale Corp.</u>, 657 F.3d 970, 985 (9th Cir. 2011) (citing Fed. R. Civ. P. 23(a)(4)).  To determine whether this requirement has been met, "courts must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  <u>Id.</u>  In determining adequacy of counsel pursuant to Rule 23(g), the Court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

Here, there is no indication Plaintiff or Class Counsel have any conflicts of interest with other class members.  (Doc. No. 56 at 21.)  Plaintiff has been actively engaged in the litigation, including providing Class Counsel with extensive

documentation regarding his experience with Defendant, staying abreast of the developments in the case, and evaluating and executing the Settlement Agreement. (Id. at 22.)  Class Counsel is experienced in complex and consumer litigation, and it has been recognized by courts and legal publications for its skill and experience in handling class actions.  (Id.)

Accordingly, both Plaintiffs and Class Counsel have demonstrated their "ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).  As Plaintiffs have met all of the Rule 23(a) criteria, the Court turns to the Rule 23(b) requirements.

### 3.    Rule 23(b)(3)

Plaintiff seeks preliminary class certification under Rule 23(b)(3).  (Doc. No. 56 at 22.)  When invoking Rule 23(b)(3), the party seeking class certification bears the burden of showing the following two criteria are met: (1) the questions of law or fact common to members of the class predominate over any questions affecting only individual members and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  See In re Wells Fargo Home Mortg. Overtime Pay Litig., 571 F.3d 953, 957 (9th Cir. 2009).

### i.    Predominance

"The Rule 23(b)(3) predominance inquiry tests whether classes are sufficiently cohesive to warrant adjudication by representation."  Hanlon, 150 F.3d at 1022.  "This analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3).  When common questions present a

significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  Id.

As discussed above, Plaintiff has demonstrated commonality amongst proposed class members.  No individualized questions predominate, and the factual and legal issues in this case are the same for every class member—that is, whether Defendant willfully violated the law by producing background reports of class members that included criminal non-convictions older than seven years.  Plaintiffs, therefore, have demonstrated that common issues predominate over individualized concerns.

### ii.      Superiority

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy."  Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1175 (9th Cir. 2010).  Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification.  (Id.)

A class action appears to be superior to other available methods for adjudicating this matter fairly and efficiently.  The amount of statutory damages available for FCRA violations ranges from $100 to $1,000.  15 U.S.C. § 1681n(a)(1)(A); see also Wolin, 617 F.3d at 1175 ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this superiority factor weighs in favor of class certification.") (alteration brackets

omitted).  Without class certification, it is unlikely that these claims would be litigated at all.  Hence, Plaintiffs have satisfied Rule 23(b)(3).

Since Plaintiffs have satisfied Rule 23(a) and Rule 23(b), the Court concludes that class certification is proper in this case, and now turns to whether the proposed settlement is fair, adequate, and reasonable under Rule 23(e).

## B.  Fairness, Adequacy, and Reasonableness of the Settlement

"[Rule] 23(e) requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable."  Hanlon, 150 F.3d at 1026.  "At the preliminary approval stage, the Court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval."  Harris v. Vector Mktg. Corp., No. C-08-5198 EMC, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011).

### 1.  Product of Serious, Informed, Non-Collusive Negotiations

To approve the Settlement at this stage, the Court must find first it is "not the product of fraud or overreaching by, or collusion between, the negotiating parties."  Hanlon, 150 F.3d at 1027.  This case was filed on December 3, 2015 (Doc. No. 1-1 at 5), and since then the Parties: litigated a motion to dismiss (Doc. No. 23); produced hundreds of pages of documents through formal discovery (Doc. No. 56 at 11); engaged in the deposition of Defendant's Rule 30(b)(6) designee (id.); and

reached a settlement on December 1, 2016, after a full-day mediation conducted by Joan Kessler, an experienced third-party mediator (id.).  There is no evidence to suggest the current settlement was the product of uninformed or collusive negotiations.  Thus, this factor weighs in favor of preliminary approval.

### 2.  Obvious Deficiencies

The Parties contend that the "settlement achieves a remarkable recovery for the Class, and contains none of the deficiencies which can stand in the way of judicial approval."  (Doc. No. 56 at 27.)  The Parties note that that totality of the $400,000 settlement fund will be paid out without any reversion to the Defendant; that the settlement is not contingent upon court approval of the requested amounts for attorneys' fees, settlement administration, and the service award; and that class members who do not opt out will receive payments from the settlement fund without needing to take any action.  (Doc. No. 18.)  The Court agrees with the Parties that the settlement on its face does not have obvious deficiencies, and thus finds that this factor weighs in favor of preliminary approval.  As noted below, however, the Court has concerns over the requested attorneys' fees and service awards.

### 3.  Preferential Treatment to Class Representatives or Segments of Class

The Parties contend that, although the Settlement "call[s] for higher settlement payments for those whose reports contained criminal information . . . as opposed to traffic or other type[s] of information, . . . this is a rational distinction." (Doc. No. 56 at 27.)  Indeed, the Court agrees that this distinction is appropriate as it is "based on the [reasonable] determination that this population was more likely to have lost a job opportunity based on the reporting of [criminal] information."  (Id.)

Accordingly, the Court agrees with the Parties that the proposed settlement does not improperly grant preferential treatment to class representatives.  Although the Court has some minor concerns regarding Plaintiff's service award—see below—those concerns are insufficient to make this factor weigh against approval.

### 4. Range of Possible Approval

"To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." Vasquez v. Coast Valley Roofing, Inc., 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009).  "Additionally, to determine whether a settlement is fundamentally fair, adequate, and reasonable, the Court may preview the factors that ultimately inform final approval: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement." Harris v. Vector Mktg. Corp., No. C-08-5198 EMC, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011) (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)).  "[W]hen (as here) the settlement takes place before formal class certification, settlement approval requires a 'higher standard of fairness.'" Lane v. Facebook, Inc., 696 F.3d 811, 819 (9th Cir. 2012).

Class Counsel achieved a settlement fund of $400,000.  After the attorneys' fees, litigation costs, settlement administration costs, and class representative award are deducted, that will leave approximately $240,000 for up to 2,717 class members.

14

Assuming full participation in the settlement, the average award per class member would be approximately $88, which is below the statutory minimum of $100 for FCRA violations.  15 U.S.C. § 1681n(a)(1)(A).

The Parties contend that, although the value of their claims could have produced a larger recovery than the proposed settlement, the "recovery is substantial" given the uncertainty and risk associated with further litigation.  Despite the low award for participating class members, the Court agrees that the recovery is adequate due to the risk presented by continuing the litigation.  The Court addresses those risks in more detail below.

### i.  Strength of Plaintiff's Case and Future Risk[1]

Plaintiff's claims under the FCRA appear strong.  As noted above, Plaintiff alleges that Defendant violated the FCRA by producing background reports that included information relating to non-convictions that predated the reports by more than seven years.  (Doc. No. at 12.)  If such allegations are true, they appear to be violations of the FCRA.  See 15 U.S.C. §§ 1681c(a)(2) and 1681c(a)(5) (prohibiting the reporting of "arrests" and "[a]ny other adverse item of information, other than records of convictions of crimes which antedates the report by more than seven years").

The analysis, however, does not end there.  Plaintiffs, at trial, would have to prove such a violations were "willful," which would make it challenging to prove

---

[1] As the first three Hanlon factors—strength of the Plaintiff's case; the risk, expense, complexity, and likely duration of future litigation; and the risk of maintaining class action status throughout the trial—are interrelated, the Court discusses them together here.

ultimate liability.  See, e.g. Long v Tommy Hilfiger U.S.A., 671 F.3d 371 (3d Cir. 2012) (holding that the defendant was not liable under the Fair and Accurate Credit Transactions Act because its practice was "merely careless" and not a "willful" violation).  Thus, had the Parties not reached the settlement agreement, Plaintiff would have faced the "substantial risk of incurring the expense of a trial without any recovery."  In re Toys 'R' Us FACTA Litig., 295 F.R.D. at 451.

Moreover, the Court may revisit the certification of the class at any time before entry of final judgment.  See Fed. R. Civ. P. 23(c)(1)(C).  Where there is a risk that class certification might not be maintained before entry of final judgment, this factor favors approving the proposed settlement.  See, e.g., Rodriguez v. West Publishing Corp., 563 F.3d 948, 966 (9th Cir. 2009).

Given the relative strength of Plaintiffs' claims, and the risks and costs associated with future complex litigation, the settlement agreement terms appear to be reasonable.  Hence, these factors favor preliminary approval.

### ii.  Extent of Discovery Completed and Stage of the Proceedings

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement."  Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1239 (9th Cir. 1998).  As noted above, the Parties litigated diligently for almost a year, including filing a motion to dismiss, beginning formal discovery, and engaging in a full-day mediation.  (Doc. No. 56 at 11)  Accordingly, the Court finds this factor weighs in favor of preliminary approval.  See Linney, 151 F.3d at 1239.

### iii.  Experience and Views of Counsel

As stated above, Class Counsel has ample experience litigating class actions similar to this case and hence has demonstrated the ability to prosecute vigorously on behalf of the class members.  Moreover, Class Counsel states that the "Settlement in this case is impressive when considering the range of possible recoveries for the Class, the Defendant's affirmative defenses, and the number of procedural hurdles between Plaintiffs and final judgment."  (Doc. No. 56 at 28.) Accordingly, the Court finds this factor weighs in favor of preliminary approval.

### iv.  Presence of a Governmental Participant and Reaction of the Class Members to the Proposed Settlement

As there is no governmental participant in this action and the Parties have not yet provided notice to the class members, these factors are irrelevant for the purposes of preliminary approval.

### v.  The Amount Offered in the Settlement

For a settlement to be fair and adequate, "a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement."  Staton, 327 F.3d at 963.

### A.  Attorneys' Fees

When evaluating attorneys' fees, the Ninth Circuit holds "the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method."  Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir.2002) (citing In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1295–96 (9th Cir.1994)).  When using the percentage-of-the-fund method, "courts

typically set a benchmark of 25% of the fund as a reasonable fee award, and justify any increase or decrease from this amount based on circumstances in the record." Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 455 (E.D. Cal. 2013); see Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir. 1989).  The percentage may be adjusted upward or downward based on (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by the class counsel; and (6) the awards made in similar cases. Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 455 (E.D. Cal. 2013) (citing Vizcaino, 290 F.3d at 1048–50).

Here, Class Counsel will receive up to one-third of the total settlement fund, which is above the Ninth Circuit's 25% "benchmark award for attorney[s'] fees." Hanlon, 150 F.3d at 1029.  Thus, before approving the proposed fee, the Court must evaluate it under the factors set forth in Vizcaino.

### Results Achieved

As noted above, under the proposed settlement, the average award per class member will be approximately $88, which is below the statutory minimum of $100 for FCRA violations.  15 U.S.C. § 1681n(a)(1)(A).  Indeed, more than 300 class members would have to opt out for the average award to reach $100.  Although Class Counsel have convinced Defendant to make some temporary changes to their background report policies, as well provide class members with their background reports free of change, the results achieved were not particularly exceptional. Accordingly, this factor weighs against a fee award above the 25% benchmark.

*Risks of Litigation*

Although Class Counsel did assume some degree of risk by representing Plaintiff, this case does not carry the type of extreme risk that would merit a departure from the 25% benchmark.  Compare Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 456–57 (E.D. Cal. 2013) (finding case was not "extremely risky" although it was questionable whether the class could be certified, whether the plaintiff could prove an employer's policies violated labor code sections on a "knew or should have known" standard, and whether plaintiff could overcome an "exhaustion defense"), and Hawthorne v. Umpqua Bank, No. 11-CV-06700-JST, 2015 WL 1927342, at *5 (N.D. Cal. Apr. 28, 2015) (holding the risk in a case did not merit an attorneys' fee award of 33% even though the class counsel "expended a significant amount of time and effort litigating this case over the past three years and undertook a major risk by taking it on a contingency basis."), with Vizcaino, 290 F.3d at 1048 (finding case "extremely risky" when, among other factors, plaintiffs lost twice in district court and there was absence of supporting precedent). Accordingly, this factor weighs against a fee award above the 25% benchmark.

*Skill and Quality of the Work*

While the Court does not doubt Class Counsel are a skilled litigators, this case presents a simple dispute as an FCRA violation, with few novel points of law and little distinguishing it from the many others like it.  Accordingly, Class Counsel has not shown exceptional skill or quality of work to warrant a departure from the 25% benchmark, and this factor weighs against a fee award above the 25% benchmark.

*Contingent Nature of the Fee*

"It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." In re Washington Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1299 (9th Cir. 1994). Thus, whether Class Counsel has taken the case on a contingency fee basis must be considered when deciding to vary from the 25% benchmark. Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 457 (E.D. Cal. 2013). Here, Class Counsel has not yet provided information regarding whether this case was taken on a contingency fee basis. Thus, this factor is at best neutral.

*Awards Made in Similar Cases*

Class Counsel has not cited any decisions showing similar cases have approved a 33.3% attorneys' fee award. Thus, this factor is at best neutral.

*Burdens Carried by Class Counsel*

Class Counsel has not yet provided information as to their expenses. Thus, this factor is at best neutral.

*Lodestar Cross-Check*

Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award. Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable. Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been

20

protracted. Thus, while the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award.

Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050 (9th Cir. 2002)

"To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 980 (9th Cir. 2008) (quoting Blum v. Stenson, 465 U.S. 886, 896 (1984)).  Here, Class Counsel has not yet provided information as to the prevailing rates "in the community for similar services by lawyers of reasonably comparable skill."  Further, Class Counsel has given no indication of the amount of hours it spent on this case.  Thus, the Court is unable to cross-check the reasonableness of its percentage award.

### Conclusion

In sum, three factors weigh against departing from the 25% attorneys' fee award benchmark, and three factors are neutral.  Further, Class Counsel has provided no information allowing the Court to calculate an appropriate Lodestar sum.  The Court, therefore, is unlikely to determine that the proposed attorneys' fees allocation is reasonable at the final settlement approval.

## B. <u>Costs</u>

According to the proposed settlement agreement, Class Counsel will apply to the Court for reimbursement out of the settlement fund for costs associated with the prosecution of the class action. (Doc. No. 56-2 ¶ 37.)  Class Counsel has not attached any accounting of past costs.  Thus, the Court will revisit the cost request at the time final approval of the settlement is sought.

## C. <u>Incentive Award</u>

Named plaintiffs "are eligible for reasonable incentive payments."  <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 977 (9th Cir. 2003).  Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  <u>Rodriguez v. W. Publ'g Corp.</u>, 563 F.3d 948, 958–59 (9th Cir. 2009).  "The district court must evaluate [incentive] awards individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'"  <u>Staton</u>, 327 F.3d at 977.  Courts may also consider: the risk to the class representative in commencing suit, both financial and otherwise; the notoriety and personal difficulties encountered by the class representative; the amount of time and effort spent by the class representative; the duration of the litigation; and the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.  <u>Van Vranken v. Atl. Richfield Co.</u>, 901 F. Supp. 294, 299 (N.D. Cal. 1995).  "Courts have generally found that $5,000 incentive payments are reasonable."  <u>Alberto</u>, 252 F.R.D. at 669.

Under the proposed settlement agreement, the named Plaintiff will receive an award of $3,500.  (Doc. No. 56-2 ¶ 36.)  Class counsel, however, failed to provide any information regarding the "actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation."  Staton, 327 F.3d at 977.  Thus, although an incentive award of $3,500 is generally reasonable, the Court cannot preliminarily approve such an award in a vacuum of evidence.  Accordingly, the Court declines to approve the incentive award.

### D.  Settlement Administrator Costs

Here, the settlement agreement states a maximum of $23,000 will be deducted from the settlement fund and paid to Kurzman Carson Consultants, the settlement administrator, for the costs of administrating the fund.  (Doc. No. 56-2 ¶¶ 26, 38.)  Kurzman Carson Consultants will be charged with administering the settlement fund by, among other things, mailing notice to settlement class members; establishing and maintaining a settlement website; implementing a temporary call center to provide class members with information about the settlement; receiving and tracking opt outs and objections from nonparticipating class members; and mailing checks to all settlement class members, including the service payment to the class representative.  (Doc. No. 56-2 ¶¶ 29, 41, 44, 45, 55.)  Accordingly, the Court finds the settlement administrator's costs reasonable for the purposes of this motion.

### C. NOTICE PROCEDURE

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement.  Fed. R. Civ. P. 23(e)(1).  Plaintiff must provide notice that is "timely, accurate, and informative." See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 172 (1989).

#### 1. Notice Form

The Court accepts the proposed notice form. The notice form explains in plain language what the case is about, what the recipient is entitled to, and what the class member must do next.  (Doc. No. 56-2 at 29.)  The Notice states the class members' options—do nothing, opt out of the class, or object to the settlement—and describes the consequences attached to each decision. (Id.)  In addition, the notice form will direct class members to the class website, which provides more information and details.  (Doc. No. 56-2 at 29, 43-50.)

#### 2. Claims Administration

The Settlement Agreement states Kurzman Carson Consultants will prepare and send the notice form and issue appropriate claim checks.  (Doc. No. 56-2 at 9.)  The proposed administrative deadlines—e.g., Defendant shall provide Kurzman Carson Consultants with a list of class members within seven days of the Preliminary Approval Order, and Kurzman Carson Consultants shall mail the notice form to each member of the class within 30 days of receiving the class list from Defendant (Doc. No. 56-2 ¶¶ 12, 41)—are reasonable and are approved.  Thus, the Court finds the notice form and proposed claims administration process adequate.

# IV.   CONCLUSION

For the reasons stated above, most of the factors considered by the Court favor settlement.  Although the Court declines to approve the proposed attorneys' fees and incentive award, the proposed settlement is within the range of possible final approval.  The Court, therefore, GRANTS the settlement agreement's preliminary approval, except as to the items noted.

Defendant shall provide a list of all settlement class members to the settlement administrator, Kurzman Carson Consultants, within seven (7) calendar days from the date of this order.

The settlement administrator shall mail the notice form to all settlement class members within thirty (30) calendar days from the date of receiving the class list from Defendant.

Class members shall have forty-five (45) calendar days from the date of the notice form mailing deadline to object to or opt out of the settlement.

Class counsel shall file supplemental briefing related to attorneys' fees and incentive awards no later than 5:00 p.m. on May 8, 2017.

The final settlement approval hearing shall take place at 2:00 p.m. on July 10, 2017.

~~Plaintiff shall move for final settlement approval no later than thirty (30) calendar days after the Opt-Out Deadline, and the Parties shall jointly request a~~

~~fairness hearing as soon as is practicable but no sooner than forty-five (45) calendar days after the Opt-Out Deadline.~~

**IT IS SO ORDERED.**

Dated:   3/1/17   _____

_____
Virginia A. Phillips
Chief United States District Judge