LAW OFFICES OF ROBERT F. BRENNAN APC
Robert F. Brennan, SBN 132449
rbrennan@brennanlaw.com
3150 Montrose Avenue
La Crescenta, CA 91214
Tel: 818.249.5291; Fax: 818.249.4329

BERGER & MONTAGUE, P.C.
E. Michelle Drake, MN Bar No. 0387366*
emdrake@bm.net
Joseph C. Hashmall, MN Bar No. 0392610*
jhashmall@bm.net
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Tel: 612.594.5999; Fax: 612.584.4470

FRANCIS & MAILMAN, P.C.
James A. Francis, PA Bar No. 77474*
jfrancis@consumerlawfirm.com
David A. Searles, PA Bar No. 21471**
dsearles@consumerlawfirm.com
Land Title Bldg, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
Tel: 215.735.8600; Fax: 215.940.8000

*admitted *pro hac vice*
** *pro hac vice* application forthcoming

*Attorneys for Plaintiff and the Proposed Class*
*[Additional Attorneys Listed on Next Page]*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN SMITH, individually and as a representative of the Class,<br><br>Plaintiff,<br><br>v.<br><br>A-CHECK AMERICA INC. d/b/a A-CHECK GLOBAL,<br><br>Defendant. | Case No.: 5:16-cv-00174-VAP-KK<br><br>**PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE PAYMENTS AND MEMORANDUM IN SUPPORT**<br><br>Date:  July 10, 2017<br>Time:  2:00 p.m.<br>Location:  Courtroom 8A, 8th Floor<br>Judge:  Hon. Virginia A. Phillips |

THE TATAR LAW FIRM, APC
Stephanie R. Tatar, SBN 237792
stephanie@thetatarlawfirm.com
3500 West Olive Ave, Suite 300
Burbank, CA 91505
Tel: 323.744.1146; Fax: 888.778.5695

NICHOLS KASTER, PLLP
Eleanor E. Frisch (SBN 304408)
efrisch@nka.com
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Tel: 612.256.3200; Fax: 612.338.4878

*Attorneys for Plaintiff and the Class*

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on July 10, 2017, at 2:00 p.m. in Courtroom 8A on the 8th floor, at First Street Courthouse, 350 West First Street, Los Angeles, California, the Honorable Virginia A. Phillips presiding, Plaintiff John Smith and Class Counsel will respectfully move the Court to award one-third of the Settlement Fund ($133,333.33) in attorneys' fees, $17,224.22 to reimburse Counsel for out-of-pocket, documented expenses, $3,500 as a service payment to the Named Plaintiff, and settlement administration expenses to be determined at the Final Approval hearing.

<u>**MEMORANDUM OF POINTS & AUTHORITIES**</u>

<u>**TABLE OF CONTENTS**</u>

I.     INTRODUCTION ................................................................................. 1

II.    STATEMENT OF THE ISSUE TO BE DECIDED .......................... 1

III.   BACKGROUND ................................................................................. 1

       RELEVANT FACTS ......................................................................... 1

       A.   THE PARTIES ENGAGED IN LITIGATION, FORMAL AND INFORMAL
            DISCOVERY, AND MEDIATION BEFORE REACHING THIS
            SETTLEMENT .......................................................................... 1

            1.   Procedural History ........................................................ 1
            2.   Summary of Plaintiff's Settled Claims Against
                 Defendant ...................................................................... 3
            3.   Settlement Negotiations ................................................ 4

       B.   THE PARTIES' SETTLEMENT AGREEMENT ................................. 4

            **1.**   Overview of Terms and Settlement Administration ....... 4
            **2.**   Reaction of Settlement Class Members to the
                 Settlement ..................................................................... 6
            **3.**   Class Counsel's Fees and Costs to Date ........................ 6

IV.    ARGUMENT ...................................................................................... 6

       A.   THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES
            AND COSTS .............................................................................. 7

            1.   The Proportion of the Settlement Fund Requested (One-
                 Third) Is Reasonable ..................................................... 8

                 a.   The Monetary and Non-Monetary Results Obtained
                      Are Significant and Impressive ........................... 9
                 b.   Class Counsel Assumed Significant Risks in this
                      Complex Litigation ............................................. 10
                 c.   Counsel's Experience Skill, and Quality
                      of Work .............................................................. 12

i

     d. Contingent Nature of the Fee ............................. 13

     e. The Burden Carried By Counsel, and Class Counsel's Lodestar, Weigh Strongly in Factor of the Fee Request ................................................... 13

     f. Awards In Similar Cases Support The Requested Fee ................................................................... 15

     g. The Reaction of the Class To Date is Positive ... 15

   2. Class Counsel's Litigation Costs Are Recoverable ...... 16

  B. THE REQUESTED SERVICE PAYMENT IS APPROPRIATE ............. 17

V. CONCLUSION ................................................................................. 18

-ii-

# TABLE OF AUTHORITIES

**CASES**

*Ashker v. Sayre*, No. 05-cv-3759, 2011 WL 825713 (N.D. Cal.

    Mar. 7, 2011) ................................................................................. 16

*Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431 (E.D. Cal. 2013)..... 15

*Blum v. Stenson*, 465 U.S. 886 (1984)............................................................ 13

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ......................................... 7

*Bohannon v. Facebook, Inc.*, No. 12-cv-1894, 2016 WL 2962109 (N.D. Cal.

    May 23, 2016) ............................................................................... 14

*Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848

    (N.D. Cal. 2010) ............................................................................ 14

*Covillo v. Specialty's Café*, No. 11-cv-594, 2014 WL 954516 (N.D. Cal.

    Mar. 6, 2014) ................................................................................. 13

*Ernst v. Sterling Infosystems, Inc.* No. 12-cv-8794, ECF No. 237 (S.D.N.Y.

    Oct. 13, 2015)................................................................................ 10

*Ford v. CEC Entm't Inc.*, No. 14CV677 JLS (JLB), 2015 WL 11439033

    (S.D. Cal. Dec. 14, 2015) ............................................................. 15

*Gambles v. Sterling Infosystems, Inc.*, 15-cv-9746, ECF No. 72 (S.D.N.Y.

    Feb. 13, 2107)............................................................................... 11

*Gauci v. Citi Mortg.*, No. 11-cv-01387, 2011 WL 3652589 (C.D. Cal. Aug.

    19, 2011)........................................................................................ 10

*Graham v. DaimlerChrysler Corp.*, 101 P.3d 140 (Cal. 2004).................. 11

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)........................... 7

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994) ........................................ 16

*Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251 (1972) ........................... 7

*Hawkins v. S2Verify*, No. C 15-03502 WHA, 2016 WL 3999458 (N.D. Cal.

    July 26, 2016) ................................................................................ 11

*In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989)................. 8

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935
    (9th Cir. 2011) ............................................................... 8, 13

*In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166
    (S.D. Cal. 2007)............................................................... 16

*In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015) ....... 14

*In re Magsafe Apple Power Adapter Litig.*, No. 09-cv-1911, 2015 WL
    428105 (N.D. Cal. Jan. 30, 2015).................................... 12

*In re Netflix Privacy Litig.*, No. 11-cv-379, 2013 WL 1120801 (N.D. Cal.
    Mar. 18, 2013) ............................................................... 18

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ......................... 8

*In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL
    4171201 (N.D. Cal. Nov. 26, 2007)................................ 14

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005)..................... 13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827, 2013 WL
    149692 (N.D. Cal. Jan. 14, 2013)..................................... 8

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291
    (9th Cir. 1994) ........................................................ 7, 8, 11

*King v. Gen. Info. Serv., Inc.*, No. 10-cv-6850, ECF Nos. 125-126 (E.D. Pa.
    Nov. 4, 2014) .............................................................. 9, 15

*King v. Gen. Info. Servs.*, Inc., 903 F. Supp. 2d 303 (E.D. Pa. 2012) ........... 3

*Klee v. Nissan N. Am., Inc.*, No. 12-cv-08238, 2015 WL 4538426 (C.D. Cal.
    July 7, 2015) .................................................................. 14

*Knight v. Red Door Salons, Inc.*, No. 08-cv-1520, 2009 WL 248367 (N.D.
    Cal. Feb. 2, 2009) ............................................................ 8

*Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918 (9th Cir. 2014), *vacated on
    other grounds*, 772 F.3d 608 (9th Cir. 2014) ...................... 7

-iv-

*McIntosh v. McAfee, Inc.*, No. 06-cv-7694, 2009 WL 673976 (N.D. Cal. 2009) ............................................................................................. 15

*Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970) ....................................... 7

*Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160 (C.D. Cal. 2010) 14

*Perma Life Mufflers, Inc. v. In'l Parts Corp.*, 392 U.S. 134 (1968) ............. 7

*Pillsbury Co. v. Conboy*, 459 U.S. 248 (1983) ............................................. 7

*Ralston v. Mortg. Inv'rs Grp., Inc.*, No. 08-cv-536, 2013 WL 5290240 (N.D. Cal. Sept. 19, 2013) ......................................................................... 17

*Razilov v. Nationwide Mut. Ins. Co.*, No. 01-cv-1466, 2006 WL 3312024 (D. Or. Nov. 13, 2006) .............................................................. 15, 16, 17

*Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979) ............................................. 7

*Rodriguez v. West Pub. Corp.*, 563 F.3d 948 (9th Cir. 2009) ..................... 17

*Rosado v. Ebay Inc.*, No. 5:12-CV-04005-EJD, 2016 WL 3401987 (N.D. Cal. June 21, 2016) ................................................................................ 14

*Schartel v. One Source Tech., LLC*, No. 1:15 CV 1434, 2016 WL 6024558 (N.D. Ohio Oct. 14, 2016) ...................................................... 3, 10, 11

*Schiller v. David's Bridal, Inc.*, No. 1:10-CV-00616-AWI, 2012 WL 2117001 (E.D. Cal. June 11, 2012) ................................................... 14

*Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) .................................................................................................. 8

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ........................................... 11

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ................................ 7, 17

*Thieriot v. Celtic Ins. Co.*, No. 10-cv-4462, 2011 WL 1522385 (N.D. Cal. April 21, 2011) ......................................................................... 16, 17

*Trustees of Const. Indust. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253 (9th Cir. 2006) ........................................... 16

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) ...... 15

-v-

*Vedachalam v. Tata Consultancy Servcs. Ltd.*, No. 06-cv-0963, 2013 WL
    3929129 (N.D. Cal. July 18, 2013) .................................................... 18

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ........... 8, 13, 15

**STATUTES**

15 U.S.C. § 1681................................................................. 4, 11, 12

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 23(h) ........................................................................ 1

**I.      INTRODUCTION**

Pursuant to Fed. R. Civ. P. 23(h), and in accordance with the Court's Preliminary Approval order (ECF No. 59), Plaintiff John Smith ("Plaintiff") and Class Counsel seek approval of an award of one-third of the Settlement Fund ($133,333.33) in attorneys' fees, $17,224.22 to reimburse Counsel for out-of-pocket, documented expenses, $3,500 as a service payment to the Named Plaintiff, and settlement administration expenses to be demined at the Final Approval hearing. In its preliminary approval order, the Court did a preliminary evaluation of the requested fee, but concluded that it lacked information regarding several important factors. (ECF No. 59).  This briefing is designed to supply the information that the Court noted was absent.

Compared to the results in similar matters, the results obtained in this case are impressive, and the risks that Counsel overcame to reach them were significant. Further, the fee requested in this case is just over *half* of Counsel's lodestar.  The risks that Counsel undertook in this case, accompanied by the fact that Counsel seeks a less than full recovery of fees, justify a departure from this Court's benchmark rate of 25% and the award of one-third of the fund in fees.

**II.      STATEMENT OF THE ISSUE TO BE DECIDED**

Whether the requested attorneys' fees, expenses, and service payments are reasonable and should be awarded.

**III.      BACKGROUND**

**RELEVANT FACTS**

**A.      THE PARTIES ENGAGED IN LITIGATION, FORMAL AND INFORMAL DISCOVERY, AND MEDIATION BEFORE REACHING THIS SETTLEMENT**

**1.      Procedural History**

Prior to reaching the Settlement Agreement in this matter, this case was

very actively litigated, with Counsel's lodestar nearly doubling the fee requested here. On December 3, 2015, Plaintiff Smith filed his proposed class action against A-Check in the Superior Court of the State of California. On January 29, 2016, A-Check removed the lawsuit to this Court. On February 17, 2016, Plaintiff filed his First Amended Complaint ("FAC"). (ECF No. 15.) On behalf of himself and the proposed class, Plaintiff Smith sought statutory damages of between $100 and $1000 per violation, plus attorneys' fees, costs, and all other available relief. (*Id.*) Defendant moved to dismiss the FAC, a motion the Court denied. (ECF Nos. 28, 35.) Defendant filed its Answer on May 6, 2016. (ECF. No. 36.)

During the litigation, the parties exchanged numerous pieces of information through both formal and informal discovery. In formal discovery, both parties produced hundreds of pages of documents, and Plaintiff also received significant discovery from a third party subpoena directed at an industry organization. (Hashmall Dec., ¶ 4.) Additionally, Plaintiff deposed Defendant's Rule 30(b)(6) designee. (*Id.*) In advance of mediation, the parties also worked cooperatively to exchange information regarding how Defendant's electronic systems could be queried to identify members of the classes. (*Id.*) In service of this effort, the parties engaged in numerous conference calls, some of which included technical consultants advising the parties on how best to extract information from Defendant's databases. (*Id.*)

On December 1, 2016, the parties attended a full-day mediation. Prior to this successful mediation, both parties prepared mediation briefs indicating their positions on the merits of Plaintiff's claims and on an appropriate settlement value and structure. (Hashmall Decl., ¶ 5.) Defendant provided a detailed account of how it had identified putative class members in its databases and Plaintiff reviewed that methodology. The mediation, conducted

-2-

1   by Joan Kessler, an experienced third-party mediator, culminated in both

2   parties signing a binding terms sheet, which served as the basis for the instant

3   Settlement Agreement. (*Id.*)

### 2.  Summary of Plaintiff's Settled Claims Against Defendant

4

5

6   All the settled claims relate to background checks that Defendant

7   produced on job applicants. As expressed in the First Amended Complaint

8   (ECF No. 15.), the FCRA prohibits a consumer reporting agency ("CRA" or

9   "agency") from including non-conviction adverse information older than

10  seven years.

11  Plaintiff Smith alleged that Defendant violated the FCRA by producing

12  a background report that included information relating to non-convictions that

13  predated the report by more than seven years. Defendant denies any liability

14  for these claims.

15  These claims were far from risk-free.  A substantially similar case

16  recently was dismissed on jurisdictional grounds, and serious challenges have

17  been raised to 1681c claims on First Amendment grounds.  See *Schartel v. One*

18  *Source Tech., LLC*, No. 1:15 CV 1434, 2016 WL 6024558, (N.D. Ohio Oct.

19  14, 2016) (dismissing case); *King v. Gen. Info. Servs.*, Inc., 903 F. Supp. 2d

20  303 (E.D. Pa. 2012) (discussing 1681c and First Amendment).  More

21  generally, there simply are not very many practitioners doing cases of this type,

22  and relatively little precedent.

23  To avoid the further costs and burdens of litigation, the parties have

24  agreed to settle the claims. The proposed Settlement Class consists of the

25  approximately 2,717 persons who Defendant has identified as (1) having been

26  the subject of a background report prepared by A-Check, (2) whose

27  background report contained one or more items of criminal information which

28

-3-

were non-convictions predating the report by more than seven years, and (3) whose report was issued at any time dating from February 17, 2014 to the date of the Settlement Agreement, January 27, 2017. (Settlement Agreement, ¶ 27.)

The Settlement Class Members will release only claims that were or could have been raised in this litigation, namely all claims arising under 15 U.S.C. § 1681c of the FCRA and state law analogs.

### 3.    Settlement Negotiations

On December 1, 2016, the parties engaged in a full day of vigorous, arm's-length negotiations in a mediation with Joan Kessler. At the conclusion of this mediation, the parties reached an agreement as to the material terms of a settlement. While the parties negotiated the case, the parties did not negotiate any terms relating to attorneys' fees for Plaintiff's Counsel or incentive awards for the Named Plaintiff until after all other material terms were agreed upon. (Settlement Agreement, ¶ 36-37.) The material terms of the Settlement were reduced to a terms sheet signed at the conclusion of mediation. In negotiations over subsequent weeks, a full Settlement Agreement was reached and executed.

### B.    THE PARTIES' SETTLEMENT AGREEMENT

### 1.    Overview of Terms and Settlement Administration

In consideration for the release of the Settlement Class Members' claims, A-Check has, first, implemented an automated process to screen out information that should not be reported under 15 U.S.C. § 1681c. (Settlement Agreement, ¶ 30.) Defendant agrees to keep this process in place for at least two years after the Settlement's Effective Date unless the Defendant believes in good faith that a change in existing law warrants a departure from this practice.

Second, Defendant has implemented procedures to ensure that criminal

-4-

charges which are dismissed due to amendment prior to conviction are no longer reported after seven years. (Settlement Agreement, ¶ 31.) Defendant agrees to keep this process in place for at least two years after the Settlement's Effective Date unless the Defendant believes in good faith that a change in existing law warrants a departure from this practice.

Third, Defendant agrees to provide Class Members who request a copy of their background report with a copy, free of charge. (Settlement Agreement, ¶ 32.) The benefit of these three non-monetary provisions is substantial both for Settlement Class Members and future applicants for employment who have their background reports prepared by A-Check.

Finally, A-Check will deposit the Gross Settlement Amount ("GSA") of $400,000 with the Settlement Administrator for the benefit of the Class. (Settlement Agreement, ¶ 33.)

After the deductions for any Court-awarded attorneys' fees, litigation expenses, settlement administration costs, and Named Plaintiff service award, this fund will be distributed to all Settlement Class Members who do not opt out. (Settlement Agreement, ¶ 20.) Defendant, in assembling the class list, shall note which Settlement Class Members had outdated information related to criminal charges on their reports, and which Settlement Class Members had only outdated information related to traffic offenses on their reports. The net settlement fund shall be distributed to Settlement Class Members such that individuals with any outdated criminal charges on their reports shall receive a payment four times greater than those with only outdated traffic violations on their reports. (*Id.* ¶ 35.)

If settlement checks are not cashed, those funds will be donated to the cy *pres* recipient, the Southern Center for Human Rights in Atlanta, subject to Court approval. (Settlement Agreement, ¶¶ 15, 39.) No portion of the

-5-

settlement fund will revert to the Defendant in any circumstance. (*Id.* ¶ 34.)

### 2. Reaction of Settlement Class Members to the Settlement

On April 7, 2017, the Settlement Administrator mailed Notice to 2,668 Settlement Class Members in accordance with the procedures outlined in the Settlement Agreement. On the same date, the Settlement Administrator also activated the Settlement Website, www.backgroundchecksettlement.com, and a toll-free telephone line for Class Members to use. As of May 8, 2017, there have been zero opt-outs and zero objections received. The postmark deadline for opt-outs and objections is May 22, 2017.  As settlement administration activities are far from finished, the Administrator will submit a declaration in conjunction with the final approval motion which spells out more fully its activities in administering the settlement, as well as its precise requested fee. The Administrator's fee is not expected to exceed $26,000.

### 3. Class Counsel's Fees and Costs to Date

To date, Berger & Montague, P.C. has incurred $15,225.50 in costs and $187,496.10 in lodestar. (Hashmall Decl. ¶¶ 9, 11.)  Nichols Kaster, PLLP has incurred $1,998.72 in costs and $46,285.00 in lodestar.  (*Id.*, ¶¶ 7, 11.)  The Tatar Law Firm has incurred $4,547.50 in lodestar. (*Id.*, ¶ 12.)

The requested awards are one-third of the Settlement Fund as attorneys' fees ($133,333.33), and reimbursement of total out-of-pocket expenses in the amount of $17,224.22, not including the Settlement Administrator's expenses. The requested fees award results in a 0.56 multiplier of Class Counsel's cumulative lodestar to date, which, as outlined below, weighs strongly in favor of the requested amount.

## IV. ARGUMENT

-6-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## A.   THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES AND COSTS

It is well-settled that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393 (1970). "[T]hose who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994). This principle is particularly important in complex litigation, where private enforcement is a necessary component of legal compliance. *See, e.g.*, *Pillsbury Co. v. Conboy*, 459 U.S. 248, 262-3 (1983); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 331 (1979); *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 266 (1972); *Perma Life Mufflers, Inc. v. In'l Parts Corp.*, 392 U.S. 134, 139 (1968). Fee awards in successful cases, such as this one, encourage class actions, and thereby promote private enforcement and compliance with federal consumer protection laws, such as the FCRA.

Courts have encouraged litigants to resolve fee issues by agreement. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Federal Rule of Civil Procedure 23(h) expressly states that "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Further, the Ninth Circuit has held that "the court need not inquire into the reasonableness of the fees even at the high end with precisely the same level of scrutiny as when the fee amount is litigated." *Staton v. Boeing Co.*, 327 F.3d 938, 966 (9th Cir. 2003). This Circuit recognizes that "the parties are compromising precisely to avoid litigation." *Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918, 922 (9th Cir. 2014), *vacated on other*

-7-

1   *grounds*, 772 F.3d 608 (9th Cir. 2014).

2          Here, the parties' Settlement Agreement, which was negotiated under

3   adversarial and non-collusive circumstances, provides for a reasonable award

4   of attorneys' fees of up to one-third of the Settlement Fund and reimbursement

5   of out-of-pocket costs, and those fees and costs should be approved.

6             **1.**      **The Proportion of the Settlement Fund Requested**

7                    **(One-Third) Is Reasonable**

8          The Ninth Circuit has approved two methods of assigning attorneys'

9   fees in common fund cases: the "percentage of the fund" method and the

10   "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir.

11   2002) (citing *In re. Wash. Pub. Power Supply*, 19 F.3d at 1295-96). Under the

12   percentage method, the court may award class counsel a percentage of the

13   common fund recovered for the class. (*Id.*) The percentage method is

14   particularly appropriate in common fund cases, because "the benefit to the

15   class is easily quantified." *In re Bluetooth Headset Prods. Liab. Litig.*, 654

16   F.3d 935, 942 (9th Cir. 2011). The Ninth Circuit's approved "benchmark"

17   percentage is 25%. (*Id.*) (quoting *Six (6) Mexican Workers v. Ariz. Citrus*

18   *Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). However, courts in this Circuit

19   often award even more than the benchmark percentage. *See Knight v. Red*

20   *Door Salons, Inc.*, No. 08-cv-1520, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2,

21   2009) ("in most common fund cases, the award exceeds [the] benchmark");

22   *see also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989)

23   ("nearly all common fund awards range around 30%"); *In re Pac. Enters. Sec.*

24   *Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming fee award equal to 33% of

25   fund); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827, 2013 WL

26   149692 (N.D. Cal. Jan. 14, 2013) (30%).

27

28

When analyzing a fee request under the percentage method, courts in this Circuit look at: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by the class counsel; and (6) the awards made in similar cases. (ECF No. 59 at 18.)   Applied here, all of these factors support Class Counsel's request for one-third of the Settlement Fund.

### a.   The Monetary and Non-Monetary Results Obtained Are Significant and Impressive

Plaintiff and Class Counsel achieved a noteworthy result in this matter, especially in light of the relatively small individual amounts at issues (the FCRA provides for statutory damages of $100 - $1,000). The monetary relief achieved for the Settlement Class will result in payments of approximately $116 for the 1,864 Class Members with criminal records on their reports, and approximately $29 for the 800 Class Members with only traffic infractions on their reports.[1]

In the preliminary approval order, the Court correctly noted that the average award is below the minimum statutory recovery of $100.  (ECF No 59 at 18 (noting average per Class Member recovery of $88).)   However, this means that if Plaintiff had prevailed on a contested class certification motion and at summary judgment or trial, all of these efforts might have only resulted in an additional $12 per Class Member, on average.  This settlement, at this phase in the proceedings, is an impressive result.  This is especially true when this case is compared with similar settlements of 1681c cases. *See*, *e.g.*, *King*

---

[1] In the preliminary approval briefing, Plaintiff noted that the per-class-member recovery could not be estimated until the relative proportion of the class with criminal, rather than traffic, charges on their reports was known.  (ECF No 56 at 19 n. 2.)  The estimates above reflect the fact that this proportion is now known.  However, the final amounts will depend on the number of opt-outs, as well as other factors.

-9-

*v. Gen. Info. Serv., Inc.*, No. 10-cv-6850, ECF No. 125 (E.D. Penn. Nov. 4, 2014) (final approval of settlement of claims that Defendant reported outdated non-conviction information, payments of approximately $49 net per Class Member)*; Ernst v. Sterling Infosystems, Inc.* No. 12-cv-8794, ECF No. 237 (S.D.N.Y. Oct. 13, 2015) (final approval of settlement that provided payments of $42 to $61 per class member for reporting obsolete information). This result is particularly impressive when considered in light of the litigation risks, discussed below, and the similar cases where the class received no recovery, because the case was dismissed. *See, e.g., Schartel*, No. 1:15 CV 1434, 2016 WL 6024558.

Further, the settlement provides substantive non-monetary relief that directly addresses the claims at issue in the case. (*See supra* § III.B.1.) Given that there is a disagreement about whether injunctive relief is even available to private plaintiffs under the FCRA, the non-monetary relief in particular is remarkable, and may achieve more for Class Members than could have ever been achieved in litigation. *See Gauci v. Citi Mortg.*, No. 11-cv-01387, 2011 WL 3652589, at *3 (C.D. Cal. Aug. 19, 2011) ("District courts in the Ninth Circuit agree that a private party may not obtain injunctive relief under the FCRA."). For some Class Members (and members of the public), the injunctive relief could make the difference in a future job application, rendering it significantly more valuable than the monetary relief in this case.

### b. Class Counsel Assumed Significant Risks in this Complex Litigation

The requested fee award is even more reasonable considering the complexity of the litigation, and the risks that Class Counsel assumed in undertaking the representation on a contingent-fee basis. Class action litigation is inherently complicated and time-consuming. On top of the demands that

-10-

come with this type of litigation, Class Counsel also had to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee recovery of any kind. The Ninth Circuit has recognized the importance of rewarding attorneys who take cases on a contingency basis. *In re Wash. Pub. Power Supply*, 19 F.3d at 1299 ("[c]ontingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose."); *see also Graham v. DaimlerChrysler Corp.*, 101 P.3d 140, 157(Cal. 2004) ("[a] contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services.") (internal citations omitted).

Here, there were risks in this case not taken into account in the Court's preliminary approval order.  (ECF No. 59 at 18.)  In addition to the risk discussed by the Court, there was real risk associated with bringing class claims for violation of 15 U.S.C. § 1681c.  The recent Supreme Court Decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) has lead defendants in FCRA actions to challenge the plaintiff's standing under Article III.  While several courts, including one in this state, have found that standing exists in a FCRA class action seeking statutory damages for violation of § 1681c, at least one court has found otherwise.  *Compare Hawkins v. S2Verify*, No. C 15-03502 WHA, 2016 WL 3999458, at *5–6 (N.D. Cal. July 26, 2016) *and Gambles v. Sterling Infosystems, Inc.*, 15-cv-9746, ECF No. 72 (S.D.N.Y. Feb. 13, 2107) (finding standing) with *Schartel v. One Source Tech., LLC*, No. 1:15 CV 1434, 2016 WL 6024558 (dismissing § 1681c putative class action for lack of Article III standing).  The jurisdictional risk in this case was very real.

-11-

These risks were compounded by constitutional arguments Defendants have made in other similar cases, including First Amendment arguments. *See King*, 903 F. Supp. 2d at 303 (discussing 1681c and First Amendment).

All of this was in addition to the need to establish Defendant's alleged violation was willful in order to obtain statutory damages for the class. 15 U.S.C. § 1681n. These risks were compounded by all of the other risks that come with class litigation, including the need to certify a class, prevail on dispositive motions, and to prevail at trial.

### c.  Counsel's Experience Skill, and Quality of Work

Class Counsel are highly experienced in complex class action litigation and consumer litigation in general. (*See* ECF No. 53-3.) Berger & Montague, P.C. was founded in 1970, and has been concentrated on representing plaintiffs in complex class actions ever since. (*Id.*) The firm has been recognized by courts for its skill and experience in handling major complex litigation. (*Id.*) Berger has been recognized by The National Law Journal in 11 of the last 15 years for its "Hot List" of top plaintiffs' oriented litigation firms in the nation. (*Id.*).

Class Counsel's substantial litigation skills were necessary to bring this action to a successful conclusion. Counsel not only defeated Defendant's motion to dismiss, they thoroughly investigated Plaintiff's claims, analyzed documents and data and used them to Plaintiff's advantage at settlement negotiations, and ultimately settled this matter on terms that are highly favorable to the Settlement Class.

This action was vigorously litigated by both sides before the parties settled. As described above in the Background section, the parties engaged in motion practice, discovery, detailed analysis of data provided by Defendant,

-12-

and informed settlement negotiations. Given the time devoted to litigating and settling this action, this factor weighs in favor of the requested award.

### d. Contingent Nature of the Fee

Counsel took this matter on a purely contingent basis. (Hashmall Dec., ¶ 15.) To date, Counsel has received no compensation in this matter, and has advance all costs of litigation. (*Id.* ¶¶ 16, 17.) If this case had been unsuccessful, Counsel would have received no compensation. (*Id.* ¶ 15.) This factor weighs strongly in favor of the modest fee requested in this case.

### e. The Burden Carried By Counsel, and Class Counsel's Lodestar, Weigh Strongly in Factor of the Fee Request.

In this case, not only have Counsel advanced all litigation costs, but Counsel have invested far more time in this case then they are requesting compensation for. The lodestar comparison confirms this. *See Vizcaino*, 290 F.3d at 1050 ("the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted"). The "cross-check calculation need entail neither mathematical precision nor bean counting . . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records." *Covillo v. Specialty's Café*, No. 11-cv-594, 2014 WL 954516, at *21-22 (N.D. Cal. Mar. 6, 2014) (quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-7 (3d Cir. 2005)).

The lodestar method is calculated by multiplying "the number of hours . . . reasonably expended on the litigation . . . by a reasonable hourly rate." *In re Bluetooth Headset*, 654 F.3d at 941. In considering rates, courts examine the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Here, Class Counsel's hourly rates are comparable to those approved in this District, and in California in general. *See In re*

-13-

1   *Magsafe Apple Power Adapter Litig.*, No. 09-cv-1911, 2015 WL 428105, at

2   *12 (N.D. Cal. Jan. 30, 2015) ("In the Bay Area, reasonable hourly rates for

3   partners range from $560 to $800, for associates from $285 to $510, and for

4   paralegals and litigation support staff from $150 to $240") (citing cases); *see*

5   *also Bohannon v. Facebook, Inc.*, No. 12-cv-1894, 2016 WL 2962109, at *5-

6   6 (N.D. Cal. May 23, 2016) (approving attorney hourly rates of $525-800); *In*

7   *re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 591-92 (N.D. Cal. 2015)

8   (approving attorney rates from $335 - 685); *Klee v. Nissan N. Am., Inc.*, No.

9   12-cv-08238, 2015 WL 4538426, at *13 (C.D. Cal. July 7, 2015) (approving

10   rates of $370 to $695); *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d

11   1160, 1172 (C.D. Cal. 2010) (approving rates of $445 – 675).

12         Class Counsel's detailed fee records are attached to the Hashmall

13   Declaration, with redactions for privilege. (Hashmall Decl., Exs. A-D.) To

14   date, Counsel's cumulative lodestar is $238,328.60. (Hashmall Decl., ¶ 12.)

15   The lodestar cross-check of the percentage requested thus results in a

16   multiplier of 0.56.  That is, awarding the full amount requested will result in

17   Counsel being paid just over ***half*** their hourly rate.  This strongly supports the

18   requested fee.  *Schiller v. David's Bridal, Inc.*, No. 1:10-CV-00616-AWI, 2012

19   WL 2117001, at *23 (E.D. Cal. June 11, 2012) (awarding one-third of the fund,

20   when award would be less than counsel's lodestar); *Chun-Hoon v. McKee*

21   *Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010) ("multiplier of less

22   than one, (sometimes called a negative multiplier) suggests that the negotiated

23   fee award is a reasonable and fair valuation of the services rendered to the class

24   by class counsel."); *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138

25   VRW, 2007 WL 4171201, at *16 (N.D. Cal. Nov. 26, 2007); *Rosado v. Ebay*

26   *Inc.*, No. 5:12-CV-04005-EJD, 2016 WL 3401987, at *8 (N.D. Cal. June 21,

27   2016)

28

-14-

The requested multiplier of 0.56 is significantly less than is commonly awarded in this Circuit. *See Vizcaino*, 290 F.3d at 1051, n. 6 (finding that in approximately 83% of cases surveyed by the court, the multiplier was between 1.0 and 4.0 and affirming a multiplier of 3.65); *McIntosh v. McAfee, Inc.*, No. 06-cv-7694, 2009 WL 673976, at *2 (N.D. Cal. 2009) (recognizing a range from "2 to 4 or even higher"); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("[m]ultipliers in the 3-4 range are common").

The lodestar cross-check thus strongly supports the reasonableness of the requested fee award.

### f. Awards In Similar Cases Support The Requested Fee

The requested award is supported by the awards in similar class cases, both in and out of the Ninth Circuit. *King v. Gen. Info. Serv., Inc.*, No. 10-cv-6850, ECF No. 126 (E.D. Penn. Nov. 4, 2014) (awarding counsel one-third of fund in 1681c class action); *Ford v. CEC Entm't Inc.*, No. 14CV677 JLS (JLB), 2015 WL 11439033, at *1 (S.D. Cal. Dec. 14, 2015) (awarding fee of one-third in FCRA class action); *Razilov v. Nationwide Mut. Ins. Co.*, No. 01-CV-1466-BR, 2006 WL 3312024, at *1 (D. Or. Nov. 13, 2006) (awarding 30% in FCRA class action).

### g. The Reaction of the Class To Date is Positive

Notice of the settlement, including the proposed amounts to be requested in fees, costs, and service payments, was emailed on April 7, 2017 to the class. Not a single Class Member has filed an objection to the requested fee award to date, and none have opted out. (Hashmall Decl., ¶ 20.) This factor supports the requested award. *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013) (finding only one opt-out and zero objections from 1,837 class members weighed in favor of awarding 33% of the common fund);

-15-

*Razilov v. Nationwide Mut. Ins. Co.*, 2006 WL 3312024 at *3 (finding 27 opt-outs out of 60,000 class members weighed in favor of granting fee award in excess of 25% benchmark); *Thieriot v. Celtic Ins. Co.*, No. 10-cv-4462, 2011 WL 1522385, at *6 (N.D. Cal. April 21, 2011) ("[t]he fact that no members of the 390-person class objected to the proposed 33% fee award —which was also communication in the notice — supports an increase in the benchmark rate.").

### 2.   Class Counsel's Litigation Costs Are Recoverable

Class Counsel also seek, and Defendants do not oppose, reimbursement of documented out-of-pocket expenses incurred in litigating and settling this matter. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (counsel should recover "those out-of-pocket expenses that would normally be charged to a fee paying client") (internal citations omitted); *Ashker v. Sayre*, No. 05-cv-3759, 2011 WL 825713, at *3 (N.D. Cal. Mar. 7, 2011) (finding "costs of reproducing pleadings, motions and exhibits are typically billed by attorneys to their fee-paying clients" and are thus reimbursable); *Trustees of Const. Indust. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258-59 (9th Cir. 2006) (legal research costs reimbursable); *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1177-8 (S.D. Cal. 2007) (mediation expenses, expert fees, legal research, copies, postage, filing fees, messenger, and federal express costs reimbursable); *Marhoefer*, 24 F.3d at 19 (postage costs reimbursable).

As Counsel's expense records show, all of the costs incurred were reasonable and necessary to the successful conclusion of this litigation. (*See* Hashmall Decl., Exs. C-D.) These costs include: filing fees, legal research, service of process, expert fees, deposition and mediation expenses, and FedEx costs. These types of expenses are routinely reimbursed by the courts as noted

-16-

above, thus Counsel's requested costs of $17,224.22 should be awarded.

### B.   THE REQUESTED SERVICE PAYMENT IS APPROPRIATE

The Ninth Circuit has recognized that named plaintiffs are eligible for reasonable service awards. *Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (service awards "are fairly typical in class action cases."). Such awards are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and to recognize their willingness to act as private attorneys general. (*Id.* at 958-59.)

In evaluating requests for service awards, the court should consider "relevant factors including 'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Thieriot*, 2011 WL 1522385 at *7 (quoting *Staton*, 327 F.3d at 977). Here, all of these factors support the requested awards. Plaintiff has expended significant time and effort in this matter, consistently putting the Class Members' interests first. Plaintiff provided documentation regarding his experiences with Defendant, was prepared to travel and sit for depositions, stayed abreast of developments in the case, and evaluated the Settlement Agreement. (Hashmall Decl. ¶ 4.) As a result of Plaintiff's efforts, and his willingness to pursue this action, substantial benefits have been achieved on behalf of the Settlement Class.

Moreover, the requested service payments of $3,500 to Plaintiff is relatively modest compared to awards granted in other complex litigation in this Circuit. *See, e.g.*, *Razilov*, 2006 WL 3312024 at *2-4 (approving incentive award of $10,000); *Ralston v. Mortg. Inv'rs Grp., Inc.*, No. 08-cv-536, 2013 WL 5290240, at *5 (N.D. Cal. Sept. 19, 2013) (approving service payment of

-17-

1   $12,500); *In re Netflix Privacy Litig.*, No. 11-cv-379, 2013 WL 1120801, at

2   *11 (N.D. Cal. March 18, 2013) (approving service awards of $6,000 for each

3   named plaintiff); *Vedachalam v. Tata Consultancy Servcs. Ltd.*, No. 06-cv-

4   0963, 2013 WL 3929129, at *7 (N.D. Cal. July 18, 2013) (approving service

5   awards of $25,000 and $35,000).

6          Accordingly, the service awards are fully justified, reasonable, and

7   should be awarded.

8   **V.      CONCLUSION**

9          Based on the foregoing, Plaintiff respectfully requests that the Court

10  grant Class Counsel's requested awards of $133,333.33 as attorneys' fees,

11  $17,224.22 in costs, a service payment to the Plaintiff of $3,500, and

12  settlement administration expenses to be demined at the Final Approval

13  hearing.

14

15

16                                              BERGER & MONTAGUE, P.C.

17  Dated:  May 8, 2017          */s/ Joseph C. Hashmall*

18                                              Joseph C. Hashmall (*pro hac vice*)

19                                              ATTORNEYS FOR PLAINTIFF

20

21

22

23

24

25

26

27

28

-18-