LAW OFFICES OF ROBERT F. BRENNAN APC
Robert F. Brennan, SBN 132449
3150 Montrose Avenue
La Crescenta, CA 91214

BERGER & MONTAGUE, P.C.
E. Michelle Drake, MN Bar No. 0387366*
emdrake@bm.net
Joseph C. Hashmall, MN Bar No. 0392610*
jhashmall@bm.net
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Tel: 612.594.5999; Fax: 612.584.4470

FRANCIS & MAILMAN, P.C.
James A. Francis, PA Bar No. 77474*
jfrancis@consumerlawfirm.com
David A. Searles, PA Bar No. 21471**
dsearles@consumerlawfirm.com
Land Title Bldg, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
Tel: 215.735.8600; Fax: 215.940.8000

*admitted *pro hac vice*
** *pro hac vice* application forthcoming

*Attorneys for Plaintiff and the Proposed Class*
*[Additional Attorneys Listed on Next Page]*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN SMITH, individually and as a representative of the Class,<br><br>Plaintiff,<br><br>v.<br><br>A-CHECK AMERICA INC. d/b/a A-CHECK GLOBAL,<br><br>Defendant. | Case No.: 5:16-cv-00174-VAP-KK<br><br>**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF THE PROPOSED SETTLEMENT AND MEMORANDUM IN SUPPORT [UNOPPOSED]**<br><br>**Date:** **July 10, 2017**<br>**Time:** **2:00 p.m.**<br>**Judge:** **Hon. Virginia Phillips**<br>**Crtm:** **8A** |

THE TATAR LAW FIRM, APC
Stephanie R. Tatar, SBN 237792
stephanie@thetatarlawfirm.com
3500 West Olive Ave, Suite 300
Burbank, CA 91505
Tel: 323.744.1146; Fax: 888.778.5695

NICHOLS KASTER, PLLP
Eleanor E. Frisch (SBN 304408)
E-mail:  efrisch@nka.com
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone:   (612) 256-3200
Facsimile:    (612) 338-4878

*Attorneys for Plaintiff and the Proposed Class*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on July 10, 2017, at 2:00 p.m., in Courtroom 8A on the 8th Floor, at the First Street Courthouse, 350 West First Street, Los Angeles, California, the Honorable Virginia A. Phillips presiding, Plaintiff will respectfully move the Court to grant final approval to the Parties' Settlement and enter final judgment in this action.

Defendant does not oppose this Motion.

# MEMORANDUM OF POINTS & AUTHORITIES

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................... 1

II.    BACKGROUND ...................................................................................... 1

       A.    The Lawsuit................................................................................. 1

       B.    Key Settlement Terms................................................................. 2

III.   PRELIMINARY SETTLEMENT APPROVAL .............................................. 3

IV.    CLASS NOTICE...................................................................................... 3

V.     CLASS MEMBER REACTION ................................................................. 3

VI.    RELIEF TO BE PROVIDED AFTER THE SETTLEMENT BECOMES

       EFFECTIVE ............................................................................................ 4

ARGUMENT...................................................................................................... 4

I.     THE RELIEF PROVIDED BY THE SETTLEMENT IS SIGNIFICANT ............... 5

II.    PLAINTIFF AND THE SETTLEMENT CLASS WOULD HAVE FACED

       SUBSTANTIAL RISKS IN THE ABSENCE OF A SETTLEMENT .................... 7

III.   THE STAGE OF THE PROCEEDINGS AND AMOUNT OF DISCOVERY

       COMPLETED SUPPORTS APPROVAL........................................................ 8

IV.    THE EXPERIENCE AND VIEWS OF COUNSEL SUPPORT THE

       SETTLEMENT ......................................................................................... 9

V.     THE REACTION OF THE CLASS MEMBERS SUPPORTS THE

       SETTLEMENT ......................................................................................... 9

CONCLUSION.................................................................................................. 10

1

# TABLE OF AUTHORITIES

2

**Cases**

3  *Barel v. Bank of Am.*, No. 06-cv-2372, ECF No. 60, Final Approval Order

4       (E.D. Pa. Jan. 16, 2009)...........................................................6

5  *Barton v. Specialized Loan Servicing, LLC*, No.13-cv-2366, ECF No. 52,

6       Stipulation of Settlement (D. Minn. Nov. 17, 2014)............................6

7  *In re Charles Schwab Corp. Secs. Litig.*, No. 08-1510, 2011 WL 1481424

8       (N.D. Cal. April 19, 2011) ....................................................8

9  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1991)...................4

10 *Dalton v. Capital Associated Indus.*, 257 F.3d 409 (4th Cir. 2001)................7

11 *Dickerson v. Cable Commc'ns, Inc.*, No. 12-cv-12, 2013 WL 6178460 (D.

12      Or. Nov. 25, 2013)..............................................................4

13 *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980)................9

14 *Gauci v. Citi Mortg.*, No. 11-cv-01387, 2011 WL 3652589 (C.D. Cal.

15      Aug. 19, 2011)..................................................................7

16 *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).............................5

17 *Holman v. Experian Info. Solutions*, No.11-cv-180, ECF 243-1, Settlement

18      Agreement (N.D. Cal. Mar. 27, 2014) .......................................6

19 *King v. United SA Fed. Credit Union*, No.09-cv-937, ECF No. 31, Final

20      Approval Order (W.D. Tex. Oct. 8, 2010)....................................6

21 *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal.

22      2004)..........................................................................10

23 *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ............................9

24 *Parthiban v. GMAC Mortg. Corp.*, No.05-cv-768, ECF No. 103-2,

25      Settlement Agreement (C.D. Cal. Jan. 10, 2008)..............................6

26 *In re Phenylpropanolamine (PPA) Products Liab. Litig.,* 227 F.R.D. 553

27      (W.D. Wash. 2004)............................................................10

28

*Phillips v. Accredited Home Lenders Holding Co.*, No.06-cv-57, ECF No. 51,
Final Approval Order (C.D. Cal. July 17, 2008)....................................6

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009)......................4

*Sleezer v. Chase Bank USA, N.A.*, No.07-cv-961, ECF No. 53-1, Settlement
Agreement (W.D. Tex. Jan. 12, 2009) ...................................................7

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016)................................................8

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008)..............................4

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007).......9

*In re Toys R Us-Delaware, Inc.–Fair & Accurate Credit Transactions Act
(FACTA) Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014)...............................5

*Yeagley v. Wells Fargo*, No.05-cv-3403, ECF No. 142, Final Approval Order
(N.D. Cal. July 23, 2007) ......................................................................7

**Federal Statutes**

Title 15, United States Code
Section 1681, *et seq.*........................................................................5, 8

Title 28, United States Code
Section 1715 ...........................................................................................3

**Other Authorities**

Newberg on Class Action § 11:41(4th ed. 2006) ..............................................4

1

## MEMORANDUM OF POINTS & AUTHORITIES

2  ## I.  INTRODUCTION

3        On March 1, 2017, the Court granted Plaintiff John Smith's ("Smith" or

4  "Plaintiff") unopposed motion for preliminary approval of class action

5  settlement with Defendant A-Check America Inc. d/b/a A-Check Global ("A-

6  Check" or "Defendant").  (ECF No. 59.)  Notice has been sent out to 2,595

7  Settlement Class Members, and the reaction has been overwhelmingly

8  positive. (Declaration of Corinne Lefler re: Notice Procedures ("Lefler Decl.")

9  ¶ 12.)  Thus far zero have opted out and zero have objected.  Given the

10  favorable response of the Class and the Settlement's reasonableness, fairness,

11  and adequacy, the Court should grant Final Approval.

12  ## II.  BACKGROUND

13        ### A.    The Lawsuit

14        The history of this class action litigation under the Fair Credit Reporting

15  Act ("FCRA") is recounted in detail in Plaintiff's preliminary approval papers,

16  and will be briefly summarized here.  *See* Plaintiff's Notice of Motion and

17  Motion for Preliminary Approval of the Proposed Settlement [Unopposed]

18  (ECF No. 56).  Plaintiff alleged that the Defendant violated the FCRA by

19  producing a background report that included information relating to non-

20  convictions that predated the report by more than seven years.  (First Am.

21  Compl., ECF No. 15.)  Defendant filed a motion to dismiss the First Amended

22  Complaint, which the Court denied.  (ECF Nos. 28, 35.)

23        The Parties then engaged in extensive discovery.  Both Parties produced

24  hundreds of pages of documents, which Class Counsel reviewed, and Plaintiff

25  reviewed significant discovery obtained through a third-party subpoena

26  directed at an industry organization.  (ECF No. 56 at 2.)  Additionally, Plaintiff

27  deposed Defendant's Rule 30(b)(6) designee.  (*Id.*)  In advance of mediation,

28

the Parties engaged in numerous conference calls, some of which included experts, to determine how best to extract information from Defendant's electronic systems to identify members of the classes. (*Id.*)

The Parties attended a full-day mediation with Joan Kessler. At the conclusion of that mediation, the Parties agreed to a settlement in principle and executed a terms sheet. After exchanging numerous drafts, the Parties executed a formal Settlement Agreement. (Settlement Agreement, ECF No. 56-2.)

### B.   Key Settlement Terms

The Settlement Agreement provides for the establishment of a $400,000 common fund to compensate the Settlement Class: persons having been the subject of a background report prepared by Defendant and whose background report contained one or more items of information which were non-convictions predating the report by more than seven years. (Settlement Agreement, ECF No. 56-2 ¶ 27.)

The Net Settlement Fund shall be distributed to Settlement Class Members such that individuals with any outdated criminal charges on their reports shall receive a payment four times greater than those with only outdated traffic violations on their reports. (*Id.* ¶ 35.) If the requested amounts are granted for attorneys' fees, administrative expenses, and a Class Representative incentive award, Defendant shall issue payment of approximately $114 for each member of the Settlement Class having outdated criminal charges on their reports and $28 for each member having outdated traffic violations on their reports. (Lefler Decl. ¶ 17.) Plaintiff has filed a motion for attorneys' fees and costs of one-third of the settlement fund, and a $3,500 incentive award for Plaintiff John Smith. (ECF No. 60.) Defendant does not oppose that motion. No Class Members have objected to the

requested fees, costs, and incentive award.[1]

The Settlement Agreement also provides for meaningful prospective relief.  First, Defendant has implemented an automated process to screen out obsolete information, including outdated dismissed charges.  (Settlement Agreement, ECF No. 56-2 ¶ 30, Ex. A.)   Second, Defendant has also implemented procedures to ensure that criminal charges which are dismissed due to amendment prior to conviction are no longer reported after seven years.  (*Id.* ¶ 31, Ex. A.)   Third, Defendant agrees to provide Class Members who request a copy of their background report with a copy, free of charge.  (*Id.* ¶ 32, Ex. A.)

## III.   PRELIMINARY SETTLEMENT APPROVAL

On March 1, 2017, the Court preliminarily approved the Settlement and certified the Settlement Class for settlement purposes.  (ECF No. 59.)

## IV.   CLASS NOTICE

On April 7, 2017, Postcard Notices of the proposed Settlement were mailed to the 2,668 members of the Settlement Class.  (Lefler Decl. ¶ 7.)  After address tracing and remailings, the Settlement Administrator was able to successfully deliver notices to 2,595 of the Class Members, or 97%.  (*Id.* ¶ 12.)  The Settlement Administrator maintained a publicly available website that posted information related to the case and the Settlement, including the Settlement Agreement, Notice, Claim Form, Plaintiff's motion for attorneys' fees, costs, and incentive award, and other case-related documents.  (*Id.* ¶ 13.)

## V.   CLASS MEMBER REACTION

The notice period closed on May 22, 2017.  As of the date of this filing,

---

[1]   The Claims Administrator also provided notice to the appropriate state and federal officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.  (Leffler Decl. ¶¶ 2-5.)

there have been no opt-outs or objections to the Settlement.  (*Id*. ¶¶ 15, 16.)

## VI.   RELIEF TO BE PROVIDED AFTER THE SETTLEMENT BECOMES EFFECTIVE

If the Settlement is granted final approval, Defendant will establish a $400,000 settlement fund within five (5) business days of the Final Approval Order.  (Settlement Agreement, ECF No. 56-2 ¶ 54.)  If the Court awards the requested attorneys' fees, costs, and incentive award, the Settlement Administrator shall send checks of approximately $114 to each member of the Settlement Class having outdated criminal charges on their reports and $28 to each member of the Settlement Class having outdated traffic violations on their reports within twenty (20) days of the entry of the Final Approval Order.  (*Id.* ¶ 55; Lefler Decl. ¶ 17.)

## ARGUMENT

There is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).  Courts may approve proposed class action settlements if they are found to be "fair, adequate, and reasonable."  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1292 (9th Cir. 1991).  The court begins its analysis with an "initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval."  Newberg on Class Actions § 11:41 (4th ed. 2006); *accord*, *Dickerson v. Cable Commc'ns, Inc.*, No. 12-cv-12, 2013 WL 6178460, at *2 (D. Or. Nov. 25, 2013) ("Courts within the Ninth Circuit 'put a good deal of stock in the product of an arms[]length, non-collusive, negotiated resolution.'") (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

The Ninth Circuit has stated that courts should consider several factors

as part of the fairness determination, including: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity and duration of further litigation; (3) the risk of maintaining class action status through trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

For the reasons set forth below, the Court should: (1) order final approval of the Parties' Settlement; (2) dismiss Plaintiff's and the Settlement Class's claims against Defendant with prejudice; (3) dismiss the opt-outs' claims against Defendant without prejudice; (4) approve Class Counsel's requests for attorneys' fees and costs and the Named Plaintiff incentive award; and (5) approve the Settlement payments for distribution to the Settlement Classes.

## I.     THE RELIEF PROVIDED BY THE SETTLEMENT IS SIGNIFICANT

The Settlement not only offers Settlement Class Members monetary relief that is comparable or exceeds recoveries approved in similar cases, it also provides meaningful non-monetary relief in the form of practice changes that directly address the claims at issue here.

With respect to monetary benefits, Plaintiff sought statutory damages under the FCRA, which provides for damages of between $100 and $1,000 for each willful violation.  (15 U.S.C. § 1681n(a)(1).)  Due to the difficulties inherent in establishing that violations were willful, it is common for FCRA class actions to settle for less than $100 per class member.  *See*, *e.g.*, *In re Toys R Us-Delaware, Inc.–Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453-4 (C.D. Cal. 2014) ("A $5 or $30 award, therefore,

represents 5% to 30% of the recovery that might have been obtained.  This is not a *de minimis* amount. Given the likelihood that plaintiff would have been unable to prove actual damages and the risk that they would have been unable to prove willfulness and recover any damages at all, the court finds that the amount of the settlement weighs in favor of approval.").  The recovery here of approximately $114 to each member of the Settlement Class having outdated criminal charges on their reports and $28 to each member of the Settlement Class having outdated traffic violations on their reports, supports the fairness of the Settlement.

The individual recovery provided also compares favorably to other settlements in similar cases.  *See, e.g., Barel v. Bank of Am.*, No. 06-cv-2372, ECF No. 60, Final Approval Order (E.D. Pa. Jan. 16, 2009) (granting final approval to claims-made settlement for 27,350 class members where class members who filed a claim form receive four months of credit monitoring services); *Barton v. Specialized Loan Servicing, LLC*, No.13-cv-2366, ECF No. 52, Stipulation of Settlement (D. Minn. Nov. 17, 2014) (settling for $14.28 per impermissible credit inquiry); *Holman v. Experian Info. Solutions*, No.11-cv-180, ECF 243-1, Settlement Agreement (N.D. Cal. Mar. 27, 2014) (settlement for class members to receive $375 on claims-made basis, less than 10% of class members ultimately made claims); *King v. United SA Fed. Credit Union*, No.09-cv-937, ECF No. 31, Final Approval Order (W.D. Tex. Oct. 8, 2010) (awarding class members $100 and a free credit score on a claims-made basis); *Parthiban v. GMAC Mortg. Corp.*, No.05-cv-768, ECF No. 103-2, Settlement Agreement (C.D. Cal. Jan. 10, 2008) (providing settlement class members with 12 months' credit monitoring on a claims-made basis); *Phillips v. Accredited Home Lenders Holding Co.*, No.06-cv-57, ECF No. 51, Final Approval Order (C.D. Cal. July 17, 2008) (awarding $10 per class member on

a claims-made basis); *Sleezer v. Chase Bank USA, N.A.*, No.07-cv-961, ECF No. 53-1, Settlement Agreement (W.D. Tex. Jan. 12, 2009) (providing identity protection services worth $71.94 per class member on a claims-made basis); *Yeagley v. Wells Fargo*, No.05-cv-3403, ECF No. 142, Final Approval Order (N.D. Cal. July 23, 2007) (approving settlement that provided for two credit reports and a $50 rebate on first mortgage loan from defendant).

Moreover, the non-monetary relief addresses the claims in this case, for the Settlement Class Members as well as for future subjects of background checks. The practice changes being implemented by Defendant will reduce the reporting of outdated adverse information for future job applicants. Given that there is disagreement about injunctive relief being available to Plaintiff under the FCRA, this benefit is substantial and may not have been achievable through litigation. *See Gauci v. Citi Mortg.*, No. 11-cv-01387, 2011 WL 3652589, at *3 (C.D. Cal. Aug. 19, 2011) ("District courts in the Ninth Circuit agree that a private party may not obtain injunctive relief under the FCRA.").

## II.   PLAINTIFF AND THE SETTLEMENT CLASS WOULD HAVE FACED SUBSTANTIAL RISKS IN THE ABSENCE OF A SETTLEMENT

The significance of the Settlement is even clearer when considered in light of the risks of continued litigation. Although Plaintiff believes that his claims were strong, considerable obstacles remained between Plaintiff and a favorable judgment. Plaintiff would have to win a contested motion for class certification, survive summary judgment motion practice, and ultimately prevail at trial. Moreover, Plaintiff faced more definite risks due to Defendant's defenses to willfulness. The FCRA is not a strict liability statute. *Dalton v. Capital Associated Indus.*, 257 F.3d 409, 417 (4th Cir. 2001). A FCRA plaintiff can recover only where the defendant has acted negligently or willfully, and where the defendant's violation was at most negligent, recovery

is limited to actual damages.  *See* 15 U.S.C. §§ 1681n(a)(1), 1681o(a)(1). Because he did not allege any actual damages, in order to recover anything, Plaintiff would have had to prove not only that Defendant violated the FCRA, but that it did so willfully.  Throughout this Litigation, Defendant has vigorously contested that it willfully violated the FCRA.  Plaintiff believes that these arguments could have been overcome in litigation, but also believes they demonstrate that there were serious obstacles to recovery in this case, a fact which weighs in favor of final approval.

Further, the Settlement in this case was negotiated in the aftermath of the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).  Resolving whether the alleged FCRA violations here give rise to a concrete harm is another hurdle Plaintiff would have faced in continued litigation.  While Plaintiff believes that informational injuries and privacy violations are sufficient to confer Article III standing, *see*, *e.g.*, *id.* at 1549, the case law on this point is continuing to develop, and this risk weighs in favor of settlement approval.

**III.   THE STAGE OF THE PROCEEDINGS AND AMOUNT OF DISCOVERY COMPLETED SUPPORTS APPROVAL**

By the time of Settlement, the Parties had devoted a considerable amount of time to discovery and litigation of this case.  Plaintiff had researched and drafted the original and amended complaints, the Parties had exchanged considerable discovery and detailed mediation submissions, and attended a full-day mediation with an experienced mediator, all before this Settlement was reached.  Consequently, the Parties had a clear understanding of the claims and defenses in this Action and were able to appropriately evaluate their positions prior to Settlement.  This weighs in favor of final approval.  *See In re Charles Schwab Corp. Secs. Litig.*, No. 08-1510, 2011 WL 1481424, at *5

(N.D. Cal. April 19, 2011) ("[T]he class settlements were reached … when class counsel had completed discovery and had conducted extensive motion practice and were thus well aware of the issues and attendant risks involved in going to trial as well as the adequacy of the amount of the class settlement.").

## IV. THE EXPERIENCE AND VIEWS OF COUNSEL SUPPORT THE SETTLEMENT

The views of experienced counsel are entitled to considerable weight when deciding to approve a settlement. *See Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("The fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."). Class Counsel here are experienced and skilled in consumer class actions and support the Settlement as being in the best interests of the Settlement Class. (*See* ECF No. 56-3). The experience of Class Counsel demonstrates that the Settlement Class was well represented at the bargaining table, and further weighs in favor of approval of the Settlement. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) (finding that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation"); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (finding this factor favored settlement approval where "[e]xperienced counsel on both sides, each with a comprehensive understanding of the strengths and weaknesses of each party's respective claims and defenses, negotiated this settlement over an extended period of time").

## V. THE REACTION OF THE CLASS MEMBERS SUPPORTS THE SETTLEMENT

Finally, the Settlement Class has reacted well to the Settlement. "It is

established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).  There have been no objections and no opt-outs received from the 2,595 Class Members. In other words, 100% of the Class Members have chosen to participate in the Settlement.  The lack of opposition to the Settlement speaks volumes as to its fairness, and consequently, this factor strongly supports the Settlement.  *See In re Phenylpropanolamine (PPA) Products Liab. Litig.,* 227 F.R.D. 553, 564 (W.D. Wash. 2004) ("[T]he Class Members themselves have effectively voted heavily in favor of the Settlement, by not opting out.  In fact, 95% of Class Members have chosen to take part in the Settlement.").

## <u>CONCLUSION</u>

In sum, all of the relevant factors support approval, and this Court should grant final approval of the Settlement.

BERGER & MONTAGUE, P.C.


Dated:  June 12, 2017           By:  */s/ Joseph C. Hashmall*
                                Joseph C. Hashmall

                                ATTORNEYS FOR PLAINTIFF