

**FILED**
CLERK, U.S. DISTRICT COURT

July 18, 2017

CENTRAL DISTRICT OF CALIFORNIA
BY:      AB      DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

John Smith,

                                    Plaintiff,

                v.

A-Check America Inc. d/b/a/ A-Check

        Global,

                                    Defendant.

EDCV 16-00174-VAP (KKx)

**Order Granting in Part and Denying in Part Plaintiff's Motions for Final Approval of Class Action Settlement and Attorneys' Fees, Costs, and Class Representative Service Payments [Doc. Nos. 60, 61]**

On May 8, 2017, Plaintiff John Smith filed a motion for attorneys' fees, costs, class representative service payment, and settlement administrator payment. (Doc. No. 60.)  On June 12, 2017, Plaintiff filed a motion for final approval of class action settlement.  (Doc. No. 61.)  On June 19, 2017, Defendant A-Check America Inc. filed notices of non-opposition to Plaintiff's motions.  (Doc. Nos. 62, 63.)

After consideration of the papers filed in support of the motion for final approval of class action settlement, as well as the arguments advanced at the hearing on this matter, the Court GRANTS that motion.  After consideration of the papers filed in support of the motion for attorneys' fees, costs, class representative service payment, and settlement administrator payment, as well as the arguments advanced at the hearing on this matter, the Court GRANTS IN PART and DENIES IN PART that motion.

United States District Court
Central District of California

# I. BACKGROUND

**A.  Procedural History**

In Summer 2014, Plaintiff applied to work for Ricoh Logistics Corporation and was offered a job.  (Doc. No. 15 at 4.)  As part of the application process, Ricoh obtained a confidential background report regarding Plaintiff from Defendant A- Check America Inc., a consumer reporting agency.  (Id.)  After receiving Plaintiff's background report, Ricoh contacted Plaintiff and told him that he should not report for work on his start date because of information contained in the report.  (Id. at 4– 5.)

In the operative complaint, Plaintiff asserts claims on behalf of himself and those similarly situated who were harmed by Defendant's conduct.  (Doc. No. 15.) He alleges that Defendant negligently and willfully violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681c(a), by generating background reports that "contain[ed] one or more items of criminal information which are non-convictions, where such information antedates the report by more than seven years."  (Doc. No. 15 at 9.)  The alleged class includes "all individuals whose report was issued [by Defendant] at any time dating from five years prior to the filing of this matter through the date of final judgment in this action."  (Id.)

On March 1, 2017, the Court granted preliminary approval of the class action settlement, which awards participating class members a $400,000.00 settlement fund to be distributed after deductions for attorneys' fees, attorneys' expenses, incentive awards, and settlement administrator costs.  (Doc. No. 59 at 1, 3.)  The Court, however, declined to approve the proposed attorneys' fees and incentive

award.  (Doc. No. 59 at 21, 23.)  The Court explained that Plaintiff had failed to establish those awards were reasonable.  (Id.)

**B. Settlement Class**

The settlement agreement between Plaintiff and Defendant defines the settlement class as:

> All Persons who were the subject of a background report prepared by Defendant, whose report contained one or more items of criminal information which were non-convictions, where such information antedated the report by more than seven years, and whose report was issued at any time dating from February 17, 2014 to the date of execution of this Agreement.

(Doc. No. 56–2 at 9.)  On March 8, 2017, Defendant provided the settlement administrator with a list of 2,717 class members.  (Doc. No. 61-1 at 3.)  As of June 12, 2017, the settlement administrator has sent individual notice successfully to 2,595 class members.  (Id. at 4.)

**C. Settlement Terms**

Parties have agreed to a settlement fund of $400,000.00.  (Doc. No. 56–2 at 11.)  Class Counsel seeks attorneys' fees in the amount of $133,333.33, expense reimbursement in the amount of $17,224.22, a class representative award of $3,500.00, and a settlement administrator payment of $23,000.00[1]—leaving a

---

[1] Class Counsel failed to submit documentation of the final administration costs. Instead, Class Counsel submitted a declaration, dated June 9, 2017, which states

United States District Court
Central District of California

United States District Court
Central District of California

remainder of $222,942.45 to be distributed among participating class members. (Doc. No. 60 at 10.)

The net settlement fund shall be distributed to class members so that members with any outdated criminal charges on their reports shall receive a payment four times greater than those with only outdated traffic violations on their reports.  (Doc. No. 56–2 ¶ 35; Doc. No. 59 at 3.)  Relying on the declaration of Corinne Lefler, a senior project manager for the settlement administrator, Class Counsel represents that those awards come out to approximately $114 for each member with outdated criminal charges on his or her reports and $28 for each member with outdated traffic violations on his or her reports.  (Doc. No. 61 at 8.) The award amounts, however, are likely significantly lower as Lefler does not appear to have considered that Class Counsel also seeks an expense reimbursement of $17,224.22.  (See Doc. No. 61-1 at 4-5 (calculating the class member awards without considering the expense reimbursement).)  Further complicating matters, the exact number of class members remains unclear.[2]  The Court, therefore, is unable to determine conclusively the award distributions for class members.

---

that the settlement administrator "estimates" that its costs will be $23,000.00. (Doc. No. 64-1 at 6.)  To the degree that the administration costs end up lower than this projected amount, any balance shall be included into the portion of the settlement fund distributed among participating class members.

[2] Lefler states in her declaration that she reformatted the class list provided by Defendants and removed duplicate records, which apparently reduced the list of names and addresses from 2,717 to 2,668.  (Doc. No. 61-1 at 3.)  After multiple attempts at mailing the notice to those individuals, only 2,595 mailings were successful.  (Id. at 4.)  Then, in her discussion of class member awards, Lefler states that there are "1,864 Criminal Class Members" and "800 Traffic Class Members," which equals a total of 2,664 class members.  (Id. at 5.)

In addition, Defendant has agreed to implement an automated process to screen out information that should not be reported under 15 U.S.C. § 1681c(a); establish procedures to ensure that criminal charges which are dismissed due to amendment prior to conviction are no longer reported after seven years; and provide class members who request a copy of their background report with one, free of charge.  (Doc. No. 56–2 at 10 ¶¶ 30–32.)  Defendant will maintain the first two practices in place for at least two years unless the Defendant believes in good faith that a change in existing law warrants a departure from that practice.  (Id. ¶¶ 31–32.)

## II.    DISCUSSION

### A.  Final Approval of the Settlement

#### 1.  Approval of the Settlement Terms

Under Rule 23(e) of the Federal Rules of Civil Procedure, "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).  A court should approve a settlement pursuant to Rule 23(e) only if the settlement "is fundamentally fair, adequate and reasonable."  Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir. 1993) (citation omitted).

"[T]he settlement may not be the product of collusion among the negotiating parties."  Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.), 213 F.3d 454, 458 (9th Cir. 2000) (citation omitted).  In addition, a court must balance the following factors to determine whether a class action settlement is fair, adequate, and reasonable:

1.  the strength of the plaintiff's case;

2.  the risk, expense, complexity, and likely duration of further litigation;

3.  the risk of maintaining class action status throughout the trial;

4.  the amount offered in settlement;

5.  the extent of discovery completed, and the stage of the proceedings;

6.  the experience and views of counsel;

7.  the presence of a governmental participant; and

8.  the reaction of the class members to the proposed settlement.

Torrisi, 8 F.3d at 1375.

The factors are not exclusive, and one factor may deserve more weight than the others depending on the circumstances. Id. at 1376. In some instances, "one factor alone may prove determinative in finding sufficient grounds for court approval." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 525–26 (C.D. Cal. 2004); Id.

### a. Non-Collusive Negotiations

To approve the settlement at this stage, the Court must first find it is "not the product of fraud or overreaching by, or collusion between, the negotiating parties." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1027 (9th Cir. 1998) (quoting Officers for Justice v. Civil Serv. Com., 688 F.2d 615, 625 (9th Cir. 1982)). This case was filed on December 3, 2015 (Doc. No. 1–1 at 5), and since then, the parties: litigated a motion to dismiss (Doc. No. 23); produced hundreds of pages of documents through formal discovery (Doc. No. 61 at 7); engaged in deposition of Defendant's Rule 30(b)(6) designee (id.); and reached a settlement on December 1, 2016, after a full-

day mediation conducted by Joan Kessler, an experienced third-party mediator (id. at 7-8; Doc. No. 56-2 at 4 ¶ 3). There is no evidence to suggest the current settlement was the product of uninformed or collusive negotiations. Thus, this factor weighs in favor of final approval.

### b. Strength of the Plaintiff's Case and Future Risks[3]

As noted in the Court's preliminary approval order, the strength of Plaintiff's claim under the FCRA appears strong. Plaintiff alleges that Defendant violated the FCRA by producing background reports that included information relating to non-convictions that predated the reports by more than seven years. (Doc. No. 15.) If that allegation is true, Defendant appears to have violated the FCRA. See 15 U.S.C. §§ 1681c(a)(2) and 1681c(a)(5) (prohibiting the reporting of "arrests" and "[a]ny other adverse item of information, other than records of convictions of crimes which antedates the report by more than seven years").

The analysis, however, does not end there. Plaintiff, at trial, would have to prove such violations were "willful," which would make it challenging to prove ultimate liability. See, e.g. Long v. Tommy Hilfiger U.S.A., 671 F.3d 371 (3d Cir. 2012) (holding that the defendant was not liable under the Fair and Accurate Credit Transactions Act because its practice was "merely careless" and not a "willful" violation). Thus, had the parties not reached the settlement agreement, Plaintiff would have faced the "risk of incurring the expense of a trial without any recovery."

---

[3] As the first three Hanlon factors—strength of the plaintiff's case; the risk, expense, complexity, and likely duration of future litigation; and the risk of maintaining class action status throughout the trial—are interrelated, the Court discusses them together here. Hanlon, 150 F.3d at 1026.

United States District Court
Central District of California

In re Toys 'R' Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig., 295 F.R.D. 438, 451 (C.D. Cal. 2014).

Moreover, the Court may revisit the certification of the class at any time before entry of final judgment.  See Fed. R. Civ. P. 23(c)(1)(C).  Where there is a risk that class certification might not be maintained before entry of final judgment, this factor favors approving the proposed settlement.  See, e.g., Rodriguez v. West Publ'g Corp., 563 F.3d 948, 966 (9th Cir. 2009).

Given the relative strength of Plaintiff's claim, and the risks and costs associated with future complex litigation, the settlement agreement terms appear to be reasonable.  Hence, these factors favor final approval.

### c. Amount Offered in the Settlement

As noted above, the settlement agreement establishes a settlement fund of $400,000.00.  (Doc. No. 61 at 8.)  Class Counsel seeks the following distributions out of the settlement fund before class members receive their awards: attorneys' fees in the amount of $133,333.33, an expense reimbursement of $17,224.22, an incentive award of $3,500.00, and a settlement administrator payment of $23,000.00.  (Doc. No. 60 at 10, Doc. No. 61-1 at 4-5.)  After those distributions, participating class members would be left with a remainder of approximately $222,942.45 to be distributed among class members.  Participating class members with any outdated criminal charges on their reports would receive a payment four times greater than those with only outdated traffic violations on their reports.  (Doc. No. 61-1 at 5.)

For a settlement to be fair and adequate, "a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." Staton v. Boeing Co., 327 F.3d 938, 963 (9th Cir. 2003). As discussed in more detail below, the attorneys' fees request in this case is unreasonable and reduces the attorneys' fees award to one-fourth of the settlement fund ($100,000.00).

At the hearing on this matter, Class Counsel stipulated to the Court that the settlement agreement provides that the Court may reduce the attorneys' fees award to an appropriate amount to afford the class a greater recovery. Indeed, Paragraph 37 of the settlement agreement states, "Should the Court decline to approve any requested payment, or reduce such payment, the Settlement shall still be effective." (Doc. No. 56-2 at 12.) After the reduction to the attorneys' fees award, participating class members will be left with a remainder of approximately $256,275.78, depending on the final administration costs. The Court finds that the increased award is within the range of reasonableness for this factor to favor final approval.

### d.  Extent of Discovery Taken in the Case

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." Linney v. Cellullar Alaska P'ship, 151 F.3d 1234, 1239 (9th Cir. 1998). As noted above, the parties litigated diligently for almost a year, including filing a motion to dismiss, beginning formal discovery, and engaging in a full-day mediation. (Doc. No. 61 at 7–8.) Accordingly, the Court finds this factor weighs in favor of final approval. See Linney, 151 F.3d at 1239.

9

United States District Court
Central District of California

### e.  Experience and Views of Counsel

As noted in the preliminary approval order, Class Counsel has ample experience litigating class actions similar to this case and has demonstrated the ability to prosecute vigorously on behalf of the class members.  (Doc. No. 59 at 17.) Class Counsel feels that the "[s]ettlement in this case is impressive when considering the range of possible recoveries for the Class, the Defendant's affirmative defenses, and the number of procedural hurdles between Plaintiffs and final judgment."  (Doc. No. 56 at 28.)  Accordingly, the Court finds this factor weighs in favor of final approval.

### f.  Presence of a Governmental Participant

There is no governmental participant in this action.  Thus, this factor is irrelevant for the purposes of final approval.

### g.  Reaction of Class Members to the Settlement

The settlement administrator mailed notices to 2668 class members and activated a settlement website and a toll-free telephone line for Class Members. (Doc. No. 61 at 9; Doc. No. 60 at 15.)  No class members requested to opt-out, none objected to the settlement, and the "reaction has been overwhelmingly positive." (Doc. No. 61 at 7, 9–10.)  Where "the overwhelming majority of the class willingly approved the offer and stayed in the class," there is "at least some objective positive commentary as to its fairness."  Hanlon, 150 F.3d at 1027.  This factor, therefore, favors final approval of the settlement.

### h.  Balance of Factors

The Court finds that, after the reduction to the attorneys' fee award, the balance of the factors favors final approval and that the settlement agreement is fair, reasonable, and adequate.  Accordingly, the Court GRANTS final approval of the settlement.

### 2.  Approval of Notice Procedures

Rule 23 requires the Court to direct to Class Members "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  In addition, Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound by the proposal."  The notice must explain in easily understood language the nature of the action, definition of the class, class claims, issues and defenses, ability to appear through individual counsel, procedure to request exclusion, and binding nature of a class judgment.  Fed. R. Civ. P. 23(c)(2)(B).  Plaintiffs must provide notice to potential opt-in class members that is "timely, accurate, and informative."  See Hoffmann-La Roche v. Sperling, 493 U.S. 165, 172 (1989).  Likewise, claim forms must be informative and accurate.  Id. at 172; Churchill Vill., L.L.C. v. GE, 361 F.3d 566, 575 (9th Cir. 2004) (notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard") (citation omitted).

The Court previously accepted the proposed notice form and administration procedures.  (Doc. No. 59 at 24.)  According to Corinne Lefler, a Senior Project Manager for the settlement administrator, notice was disseminated through

11

procedures that were in conformity with the Court's preliminary approval order. (Doc. No. 61–1 at 3-4.)  Given Lefler's representations, the Court finds that the Notice was reasonable as to its content and the method of communication. Accordingly, the Court approves the notice procedures.

**B.  Attorneys' Fees, Costs, Incentive Award, and Settlement Administration Costs**

Class Counsel requests final approval of the attorneys' fees, costs, incentive award, and settlement administrative expenses.  The Court addresses each in turn below.  <u>Staton</u>, 327 F.3d at 963 ("[T]o avoid abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement.").

**1.  Attorneys' Fees**

Notwithstanding an explicit agreement to shift attorneys' fees in a certified class action, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  <u>Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)</u>, 654 F.3d 935, 941 (9th Cir. 2011).

Under both Ninth Circuit and California precedent, a court may exercise discretion to award attorneys' fees from a common fund by applying either the lodestar method or the percentage-of-the-fund method.  <u>Fischel v. Equitable Life Assur. Soc'y of United States</u>, 307 F.3d 997, 1006 (9th Cir. 2002); <u>Wershba v. Apple Comput., Inc.</u>, 91 Cal. App. 4th 224, 254 (2001).  "Irrespective of the chosen

method, 'the district court should be guided by the fundamental principle that fee awards out of common funds be 'reasonable under the circumstances.''" Alberto v. GMRI, Inc., 252 F.R.D. 652, 667 (E.D. Cal. 2008) (citing Chem. Bank v. City of Seattle (In re Wash. Pub. Power Supply Sys. Sec. Litig.), 19 F.3d 1291, 1296 (9th Cir. 1994)).

Plaintiff seeks to employ the percentage-of-the-fund method, whereby Class Counsel requests $133,333.33—or one-third—of the gross $400,000.00 settlement fund for attorneys' fees.  (Doc. No. 60 at 15.)  When using the percentage-of-the-fund method, "courts typically set a benchmark of 25% of the fund as a reasonable fee award, and justify any increase or decrease from this amount based on circumstances in the record."  Monterrubio v. Best Buy Stores, Ltd. P'ship., 291 F.R.D. 443, 455 (E.D. Cal. 2013) (citation omitted); see also Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir. 1989).  The percentage may be adjusted upward or downward based on "(1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases."  Monterrubio, 291 F.R.D. at 456 (citing Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048–50 (9th Cir. 2002)).  The Court addresses these factors below.

### a.  Benchmark Departure Factors

*Results Achieved*

The statutory guidelines for FCRA violations provide that $100 is the minimum award and that each class member could have potentially been awarded up to $1000 had the class been successful at trial.  15 U.S.C. § 1681n(a)(1)(A).  Class Counsel represents that, after attorneys' fees, settlement administration costs,

13

and the class representative award are deducted, the average award per class member will be approximately $114 for each class member that had criminal charges on his or her report and $28 for each members that had outdated traffic violations on his or her report.  (Doc. No. 61 at 8.)  As noted above, these calculations appear inaccurate, as they do not consider that Class Counsel is seeking an expense reimbursement of $17,224.22.  (See id.; Doc. No. 61-1 at 4–5.)  Regardless, even if the Court considers the inflated awards, the results achieved remain at or below the low-end of the statutory range.  Indeed, results of this type appear to be quite common in FCRA cases.  See De Santos v. Jaco Oil Co., No. 1:14-CV-0738-JLT, 2015 WL 5732829, at *13 (E.D. Cal. Sep. 29, 2015) (surveying cases pursuing claims under the FCRA and similar statutes, noting that the settlement results in those cases "range from $22.44 to $200 per class member," and finding that the results in the case before the court were "exceptional" because the settlement awarded $50 per class member in "Group 1," "approximately $350" per class member in "Group 2," and conferred substantial non-monetary benefit on current and future applicants).[4]

Class Counsel notes that Defendant has also agreed to make temporary changes to its background report policies, as well as provide class members with their background reports free of charge.  Those benefits, however, do not transform an otherwise average result into an exceptional one.

---

[4] The cases Class Counsel cites are consistent with this range of awards.  (See Doc. No. 60 at 18–19 (citing cases with awards approximately $49 per class member and $42 to $61 per class member)).

14

United States District Court
Central District of California

United States District Court
Central District of California

Accordingly, this factor weighs against a fee award above the 25% benchmark.[5]

*Risks of Litigation*

Class counsel argues that they faced substantial risks with this litigation. They point to the challenges presented in establishing Defendant's violations were willful and Plaintiff's injuries were sufficient to confer standing, as well as the possibility that Defendant could have raised "constitutional arguments" as it has done in "other similar cases." (Doc. No. 60 at 20–21.) The Court, however, is not persuaded that these risks are more significant than those presented in a typical FCRA case. As the Court noted in its preliminary approval order, although Class Counsel did assume some degree of risk by representing Plaintiff, this case does not carry the type of extreme risk that would merit a departure from the 25% benchmark. Compare Monterrubio, 291 F.R.D. at 456–57 (finding the case was not "extremely risky" although it was questionable whether the class could be certified, whether the plaintiff could prove an employer's policies violated labor code sections on a "knew or should have known" standard, and whether plaintiff could overcome an "exhaustion defense") and Hawthorne v. Umpqua Bank, No. 11-CV-06700-JST, 2015 WL 1927342, at *5 (N.D. Cal. Apr. 28, 2015) (holding the risk in a case did not merit an attorneys' fee award of 33% even though the class counsel "expended a significant amount of time and effort litigating this case over the past three years and undertook a major risk by taking it on a contingency basis"), with Vizcaino, 290 F.3d at 1048 (finding case "extremely risky" when, among other

---

[5] Plaintiff cites cases outside the Ninth Circuit which are not binding and do not establish that the award in this case is an exceptional one.

15

factors, plaintiffs lost twice in district court, before reviving their case on appeal, and class counsel pursued their claims despite an absence of supporting precedent).

Accordingly, this factor weighs against a fee award above the 25% benchmark.

*Skill and Quality of the Work*

As noted in the preliminary approval order, the Court does not doubt Class Counsel are skilled litigators.  This case, however, presents a simple dispute as to the willfulness of an FCRA violation with few novel points of law and little distinguishing it from the many others like it.  Accordingly, Class Counsel has not shown exceptional skill or quality of work to warrant a departure from the 25% benchmark.  This factor, therefore, weighs against departing from the benchmark.

*Contingent Nature of the Fee*

Class Counsel took this case on a contingent fee basis.  The Ninth Circuit "has suggested the distinction between a contingency arrangement and a fixed fee arrangement alone does not merit an enhancement from the benchmark."  Richardson v. THD At-Home Servs., Inc., No. 1:14-CV-0273-BAM, 2016 WL 1366952, at *9 (E.D. Cal. Apr. 6, 2016) (citing In re Bluetooth, 654 F.3d at 942 n.7); see also Torrisi, 8 F.3d at 1376 (noting that there were "no special circumstances . . . which indicate the 25% benchmark award is either too small or too large" even though class counsel took the case on "double contingency").  Accordingly, the Court will treat this factor as neutral.

16

*Awards Made in Similar Cases*

As noted above, the Ninth Circuit has established a 25% "benchmark award for attorney[s'] fees." Hanlon, 150 F.3d at 1029. Class Counsel cite to cases in which courts have awarded attorneys' fees at or above one third of the total settlement fund. (Doc. No. 60 at 24 (citing King v. Gen. Info. Serv., Inc., No. 10-CV-6850, ECF Nos. 120-1 at 2, 126 (E.D. Penn. Nov. 4, 2014) (33.33%); Ford v. CEC Entm't Inc., No. 14CV677 JLS (JLB), 2015 WL 11439033, at *1 (S.D. Cal. Dec. 14, 2015) (one-third award); Razilov v. Nationwide Mut. Ins. Co., No. 01-CV-1466-BR, 2006 WL 3312024, at *1 (D. Or. Nov. 13, 2006) (30%).

King, which is an opinion from the Eastern District of Pennsylvania, is irrelevant as to whether the Court should depart the Ninth Circuit's benchmark in the present case. No. 10-CV-6850. Razilov, while it does arise within the Ninth Circuit, is easily distinguishable from the present case: the lawsuit there spanned approximately five years, included 65,000 potential class members, involved "difficult legal issues of first impression regarding the meaning of the words 'adverse action' under the FCRA"; and resulted in awards of "approximately $200 or 20% of the maximum statutory damage" for each class member, which is almost twice what Class Counsel represents the higher-earning class members will receive in this case and eight times what the lower-earning class members will receive. 2006 WL 3312024 at *2–4.

Although the facts of Ford appear similar to those here, a single case is insufficient to establish that courts routinely depart the benchmark in such FCRA cases. 2015 WL 11439033, at *1. Rather, the Court's own research suggests that such a departure is not commonplace. See, e.g., Roe v. Frito-Lay, Inc., No. 14-CV-

17

00751-HSG, 2017 WL 1315626, at *7 (N.D. Cal. Apr. 7, 2017) ("The Court acknowledges the significant results that class counsel achieved for the class [in which each class member received a payment of approximately $193.45] and the detailed discovery it conducted over the course of several years, and finds that a benchmark award of twenty-five percent of the settlement fund is appropriate."); Syed v. M-I LLC, No. 1:14-742 WBS BAM, 2016 WL 310135, at *7-9 (E.D. Cal. Jan. 26, 2016) (awarding 25% benchmark in an FCRA case that featured "substantial risks," two motions to dismiss, and more than 65,000 members).

While it seems that courts may sometimes depart from the benchmark in cases like the present one, Class Counsel has failed to establish that such practice is typical. Accordingly, this factor is neutral.

### Burdens Carried by Class Counsel

Class Counsel seeks a $17,224.22 expense reimbursement and the lodestar figures show that Class Counsel spent 525.2 hours in total on this case. (Doc. No. 60 at 10; Doc. No. 60-1 at 4-5.) Such expenses, although significant, do not appear to be unusual in FCRA class action cases. Thus, Class Counsel has not established a significant burden to justify departing from the 25% benchmark.

### b.  Lodestar Cross-Check

Courts also use the lodestar method, "which measures the lawyers' investment of time in the litigation," to provide "a check on the reasonableness of the percentage award." Vizcaino, 290 F.3d at 1050. "[W]hile the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award." Id.

United States District Court
Central District of California

The lodestar is "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." <u>Morales v. City of San Rafael</u>, 96 F.3d 359, 363 (9th Cir. 1996). "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." <u>Camacho v. Bridgeport Fin., Inc.</u>, 523 F.3d 973, 980 (9th Cir. 2008) (quoting <u>Blum v. Stenson</u>, 465 U.S. 886, 895 n.11 (1984)).

Here, Class Counsel has provided information demonstrating the amount of hours spent working on the case and the hourly rate of each attorney. The total amount in attorneys' fees is $238,328.60, resulting in a lodestar multiplier of 0.56. (Doc. No. 60 at 23.) Three law firms served as Class Counsel during the pendency of this lawsuit. The hourly rates of their attorneys, paralegals, and support staff, as well as the hours billed on this matter, are identified below.

Nichols Kaster, PLLP

| Timekeeper | Position | Hourly Rate | Hours Billed |
|---|---|---|---|
| Dan Bryden | Associate | $475.00 | 35.4 |
| Dan Brome | Associate | 350.00 | 0.6 |
| Eleanor E. Frisch | Associate | 300.00 | 0.4 |
| Erin Odenthal | Paralegal | 175.00 | 11.8 |
| E. Michelle Drake | Shareholder | 675.00 | 30.5 |
| Jean Hibray | Paralegal | 275.00 | 9.9 |
| Matthew Helland | Partner | 550.00 | 0.1 |
| Megan Yelle | Associate | 350.00 | 10.6 |
| Total | | | 99.3 |

19

(Doc. No. 60-1 at 4.)  Class Counsel represents that the above figures establish that Nichols Kaster's lodestar is $46,285.  (Id.)

Berger & Montague, PC

| Timekeeper | Position | Hourly Rate | Hours Billed |
|---|---|---|---|
| Angi Kittelson | Paralegal | $275.00 | 46.8 |
| Arun Rajendran | Litigation Support | 43.00 | 2.7 |
| Harriet L. Cable | Law Clerk | 275.00 | 31.0 |
| Jean Ebensperger | Paralegal | 275.00 | 80.1 |
| John G. Albanese | Associate | 415.00 | 2.1 |
| Joseph C. Hashmall | Associate | 500.00 | 150.0 |
| Jean Hibray | Paralegal | 275.00 | 9.4 |
| E. Michelle Drake | Shareholder | 675.00 | 95.6 |
| Rachel Gebo | Case Intake Analyst | 150.00 | 5.4 |
| Sandy McCollum | Litigation Support | 57.50 | 2.8 |
| Total | | | 425.9 |

(Doc. No. 60-1 at 4–5.)  Class Counsel represents that the above figures establish that Berger & Montague's lodestar is $187,496.10.  (Id.)

Tatar Law Firm, AP

| Timekeeper | Position | Hourly Rate | Hours Billed |
|---|---|---|---|
| Stephanie R. Tatar | Principle at Tatar Law Firm, APC | $425.00 | 10.7 |

(Doc. No. 60-2 at 4, 11).  Class Counsel represents that the above figures establish that Tatar Law's lodestar is $4,547.50.  (Doc. No. 60-1 at 5.)

Despite this information, Class Counsel have not met their burden to establish that the rates they seek are reasonable.  With the exception of Tatar, who

20

submitted a declaration detailing her experience and billing rate (Doc. No. 60-2),

Class Counsel did not submit information regarding each attorney's background.

While Tatar's declaration attached a survey of the average attorney billing rates in

California and the Los Angeles area (id.), that report is largely meaningless to the

Court given the lack of background information regarding the other attorneys

involved in this case.  Moreover, the Court is skeptical of the reliability of the report

as the Metro Los Angeles billing rates it lists do not steadily increase with

experience, but instead fluctuate wildly between the identified seniority periods.

(See Doc. No. 60-2 (listing billing rates of $588/hr for attorneys with 11-15 years of

experience; $483/hr for attorneys with 16-20 years of experience; $725/hr for

attorneys with 21-25 years of experience; $500/hr for attorneys with 26-30 years of

experience; and only $56/hr for attorneys with more than 31 years of experience),

(Doc. No. 60-2 at 44) (emphasis added).)


     In addition, the Court has performed a limited review of Class Counsel's

billing reports.  See Schiller v. David's Bridal, Inc., No. 1:10-CV-00616-AWI, 2012

WL 2117001, at *20 (E.D. Cal. June 11, 2012) ("Where the use of

the lodestar method is used as a cross-check to the percentage method, it can be

performed with a less exhaustive cataloguing and review of counsel's hours.").

From that initial review, some of Class Counsel's billings appear inflated.  For

example, several attorneys charge their full billing rates for travel between

Minnesota and Los Angeles, and Minnesota and Atlanta.  See, e.g., Doc. No. 60-1 at

24, 30, 35.  Due to the proposed billing rates of the attorneys in this case, those

charges resulted in billings of more than $20,000 based primarily on travel.  Id.

Moreover, at least one associate attorney—who has a proposed billing rate of $500 per hour—billed for secretarial tasks, such as "[m]aking travel plans," "changes to travel plans," and creating a mediation binder.  (Doc. No. 60-1 at 17, 23, 25.)  Class Counsel also includes billings on behalf of paralegals and "support staff" for similar clerical or secretarial tasks, including proofreading, making copies, uploading data to a server, formatting documents, and managing databases.  (Id. at 9, 11-12, 13, 31).  The inclusion of such charges into the lodestar calculation is improper.  See Gauchat-Hargis v. Forest River, Inc., No. 2:11-CV-02737-KJM, 2013 WL 4828594, at *6 (E.D. Cal. Sept. 9, 2013) ("Costs associated with clerical or 'secretarial' tasks are typically considered overhead expenses reflected in the hourly billing rate and are not properly included in the lodestar analysis, even at the reduced hourly rate of a paralegal. . . . Such excludable tasks include proofreading, indexing and assembling documents.") (citations omitted).

As Class Counsel has failed to submit detailed information as to each attorney's background, reliable information as to the prevailing rates for similar services in the community, or lodestar figures that are not improperly inflated, the Court declines to rely on Class Counsel's lodestar calculations.  Even if Class Counsel were to submit more detailed information in the future, the Court would be unlikely to grant a more than 8% departure from the benchmark given that none of the factors listed above support such a departure.  Ridge v. Infinity Sales Grp., LLC, No. CV 12-6985-GW (SHx), 2014 WL 12589629, at *8 (C.D. Cal. July 24, 2014) (noting that, "[g]enerally speaking, this Court does not exceed the . . . 25% benchmark" in "relatively simple and straightforward" cases resolved "within a relative brief period" unless "there is some indication that counsel performed exceptionally or in another unusual manner" and that "[t]his remains true even

though Plaintiff's counsel indicates that the figure he seeks is itself already a negative multiplier when a lodestar cross-check is applied"); see also Covillo v. Specialtys Café, No. C-11-00594 DMR, 2014 WL 954516, at *6-7 (N.D. Cal. Mar. 6, 2014) (awarding 30% of the common fund, rather than the requested 33%, because "the 'usual range' for fee awards when using the percentage method is 20-30%," and stressing that the departure from the benchmark was warranted because of the "substantial recovery" for class members, "skillful[] representation" on the part of Class Counsel, and the "significant risks" posed by litigation").

### c. Conclusion

The totality of the departure factors does not weigh in favor of an award above the 25% benchmark.  In addition, the Court declines to rely on Class Counsel's lodestar calculation figures for the reasons stated above.

For those reasons, the Court finds that the facts of this case do not present the type of "unusual circumstances" required to justify a departure from that benchmark.  Graulty, 866 F.2d at 272.  The Court, therefore, DENIES Class Counsel's application for attorneys' fees equal to one-third of the settlement fund ($133,333.33).  Instead, pursuant to Paragraph 37 of the settlement agreement and Class Counsel's representations at the hearing on this matter, the Court GRANTS an attorneys' fees award of one-fourth of the settlement fund ($100,000.00).

### 2. Class Counsel Expenses

Class Counsel seeks a $17,224.22 expense reimbursement.  (Doc. No. 60 at 10.)  Class Counsel has submitted a detailed accounting as to those expenses.

United States District Court
Central District of California

(Doc. 60-1 at 43–56.)  The Court finds that those expenses are reasonable and approves them.

### 3. Incentive Award

Named plaintiffs "are eligible for reasonable incentive payments." Staton, 327 F.3d at 977.  Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Rodriguez, 563 F.3d at 958–59.  "The district court must evaluate [incentive] awards individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" Staton, 327 F.3d at 977.  Courts may also consider: "1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995).  "Courts have generally found that $5,000 incentive payments are reasonable." Alberto, 252 F.R.D. at 669.

Here, Plaintiff "has actively engaged in discovery and settlement negotiations and has had frequent correspondence with Class Counsel to stay abreast of developments."  (Doc. No. 60–1, Decl. of Hashmall at 6 ¶ 19.)  Plaintiff has invested "significant time and effort" and "has diligently represented the

interests of Class Members." (Doc. No. 60 at 26; Id.)  Given Plaintiff's level of involvement and the reasonable incentive award, the Court finds that a $3,500.00 incentive award is appropriate in this case and approves the award.

### 4. Settlement Administrator Costs

Here, the settlement agreement states a maximum of $23,000.00 will be deducted from the settlement fund and paid to Kurzman Carson Consultants, the settlement administrator, for the costs of administrating the fund.  (Doc. No. 59 at 3.)  Kurzman Carson Consultants was charged with administering the settlement fund by, among other things, mailing notice to settlement class members; establishing and maintaining a settlement website; implementing a temporary call center to provide class members with information about the settlement; receiving and tracking opt outs and objections from nonparticipating class members; and mailing checks to all settlement class members, including the service payment to the class representative.  (Doc. No. 59 at 23.)

As noted above, Class Counsel has failed to submit documentation of the final administration costs.  Based on the declaration submitted by Class Counsel, which states that the administration costs are estimated to reach $23,000.00 (Doc. No. 64-1 at 6), the Court approves an administration cost payment up to that amount.  To the degree that the administration costs end up lower than the projected $23,000.00, any balance shall be included to the portion of the settlement fund distributed among participating class members.

### III.   CONCLUSION

For the reasons stated above, the Court GRANTS the motion for final approval of the settlement.

The Court GRANTS IN PART and DENIES IN PART the motion for attorneys' fees, expenses, incentive award, and settlement administrator payment. Class Counsel's request for attorneys' fees in the amount of $133,333.33 is DENIED.  Instead, the Court GRANTS Class Counsel's attorneys' fees of no more than $100,000.00.  All other administrative costs are APPROVED.

**IT IS SO ORDERED.**

Dated:    7/18/17

Virginia A. Phillips
Chief United States District Judge

United States District Court
Central District of California